SMITH PATTEN
SPENCER F. SMITH, ESQ. (SBN: 236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone: (415) 402-0084
Facsimile: (415) 520-0104

Attorneys for Plaintiff
RAUL BONILLAS

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RAUL BONILLAS, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>UNITED AIR LINES, INC. and DOES 1<br>through 10, inclusive,<br><br>        Defendants. | Case No.: 4:12-cv-06574-SBA-EDL<br><br>**PLAINTIFF'S OPPOSITION TO<br>DEFENDANT'S MOTION FOR<br>ATTORNEYS' FEES**<br><br>Date:        October 14, 2014<br>Time:        1:00 p.m.<br>Judge:      Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES......................................................................................iii

I.      INTRODUCTION.............................................................................................1

II.     FACTUAL BACKGROUND...........................................................................2

III.    ARGUMENT.....................................................................................................4

      A.    LEGAL STANDARD FOR SHIFTING FEES IN DISCRIMINATION
          CASES.........................................................................................................4

          1.    *Standard For Shifting Fees For Prevailing Defendant In
              Discrimination Case*.....................................................................4

          2.    *Standard For Sanctions Pursuant to Section 1927 and The Court's
              Inherent Powers*.........................................................................8

      B.    DEFENDANT'S REQUEST FOR FEES AND/OR SANCTIONS
          SHOULD BE DENIED BECAUSE PLAINTIFF HAS PRESENTED
          EVIDENCE THAT THE DEFENDANT DECISION-MAKERS HAD
          KNOWLEDGE OF HIS DISABILITY............................................9

      C.    DEFENDANT'S MOTION FOR FEES AND/OR SANCTIONS MUST
          BE DENIED BECAUSE DEFENDANT HAS CITED NO AUTHORITY
          TO SUPPORT ITS POSITION THAT A DISABLED PLAINTIFF CAN
          BE SANCTIONED FOR NOT PRESENTING DIRECT EVIDENCE
          REGARDING DECISION-MAKERS' KNOWLEDGE OF
          PLAINTIFF'S DISABILITY...........................................................17

      D.    DEFENDANT'S FAILURE TO MITIGATE SHOULD PRECLUDE AN
          AWARD FOR ATTORNEY'S FEES................................................19

      E.    DEFENDANT HAS FAILED TO SUBMIT EVIDENCE SUFFICIENT
          TO SUPPORT AN AWARD OF FEES, AND HAS NOT ESTABLISHED
          THAT THE AMOUNT CLAIMED IS APPROPRIATE............................20

          1.    *Rates*.............................................................................................21

          2.    *Hours*............................................................................................22

          3.    *Fees Upon Fees*..........................................................................23

          4.    *Relative Ability to Pay*.............................................................23

**IV.**     **CONCLUSION**..............................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)...................................................................................10

*Aragon v. Republic Silver State Disposal, Inc.*
    292 F.3d 654 (9th Cir. 2002).....................................................................11

*Banuelos v. Waste Connections, Inc.*
    2013 U.S. Dist. LEXIS 130753 (E.D. Cal. Sept. 11, 2013)......................15

*Bergene v. Salt River Project Agric. Improvement & Power Dist.*
    272 F.3d 1136 (9th Cir. 2001)...................................................................13

*B.K.B. v. Maui Police Department*
    276 F.3d 1091 (9th Cir. 2002)...................................................................18

*Blum v. Stenson*
    465 U.S. 886 (1984)...................................................................................21

*Bond v. Pulsar Video Prods.*
    50 Cal. App. 4th 918 (1996)...................................................................4, 8

*Brooks v. Allison Div. of General Motors Corp.*
    874 F.2d 489 (9th Cir. 1989).....................................................................19

*Brown v. Federation of State Medical Boards*
    830 F.2d 1429 (7th Cir. 1987)...................................................................19

*Brundage v. Hahn*
    57 Cal. App. 4th 228 (1997).......................................................................12

*Burekovitch v. Hertz*
    2001 U.S. Dist. LEXIS 12173 (E.D. N.Y. July 24, 2001)..........................19

*Chambers v. NASCO, Inc.*
    501 U.S. 32 (1991).......................................................................................8

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*
    434 U.S. 412 (1978)..................................................................................5, 6

*Chuang v. Univ. of Cal. Davis*
    225 F.3d 1115 (9th Cir. 2000).....................................................................11

*Cotterill v. City & County of San Francisco*
    No. 08-2295, 2010 WL 1223146 (N.D. Cal. March 10, 2010).....................19

*Cummings v. Benco Bldg. Servs.*
    11 Cal.App.4th 1383 (1992)...............................................................................15

*Davis v. City & Cnty. of S.F.*
    976 F.2d 1536 (9th Cir. 1992)...........................................................................21

*Doe v. Univ. of the Pac.*
    2010 U.S. Dist. LEXIS 130017 (E.D. Cal. Dec. 8, 2010)...........................5, 6, 16, 17, 20

*Dubisky v. Owens*
    849 F.2d 1034 (7th Cir. 1988)...........................................................................19

*Edwards v. Nat'l Business Factors, Inc.*
    897 F. Supp. 458 (D. Nev. 1995).......................................................................22

*Elsman v. Standard Fed. Bank*
    238 F. Supp. 2d 903 (E.D. Mich. 2003).............................................................18

*Fox v. Vice*
    131 S. Ct. 2205, 2213 (2011)...........................................................................4, 5

*Galdamez v. Potter*
    415 F.3d 1015 (9th Cir. 2005)...........................................................................13

*Gates v. Deukmejian*
    987 F.2d 1392, 1399 (9th Cir. 1992).................................................................22

*Harris v. Maricopa County Superior Court*
    631 F.3d 963 (9th Cir. 2011).............................................................................5

*Heard v. Lockheed Missiles & Space Co., Inc.*
    44 Cal. App. 4th 1735, 1748, 52 Cal. Rptr. 2d 620 (1996)...............................11

*Hensley v. Eckerhart*
    461 U.S. 424 (1983)...........................................................................20, 21, 22, 23

*Hollander v. Am. Cyanamid Co.*
    895 F.2d 80 (2nd Cir. 1990)..............................................................................11

*Hughes v. Rowe*
    449 U.S. 5 (1980).........................................................................................5, 6, 16

*Identity Arts v. Best Buy Enter.*
    2008 U.S. Dist. LEXIS 119865 (N.D. Cal. Mar. 26, 2008)................................22

*In re: Keegan Mgmt Co., Securities Litigation*

78 F.3d 431 (9th Cir. 1995)...........................................................................17

*I.T. v. Dep't of Educ.*
2014 U.S. Dist. LEXIS 60127 (D. Haw. Feb. 27, 2014)................................20-21

*Jensen v. Wells Fargo Bank*
85 Cal. App. 4th 245 (Cal. App. 2d Dist. 2000)...........................................12

*Jordan v. Multnomah Cnty.*
815 F.2d 1258, 1263 (9th Cir. 1987)....................................................21, 22

*Kerr v. Screen Extras Guild, Inc.*
526 F.2d 67 (9th Cir. 1975)..................................................................21

*Lahiri v. Universal Music & Video Dist. Corp.*
606 F.3d 1216 (9th Cir. 2010)...........................................................8, 18

*Lam v. University of Hawaii*
40 F.3d 1551, 1563 (9th Cir. 1994).....................................................10-11

*Louie v. Carichoff*
No. 05-0984, 2006 WL 3349521 (E.D. Cal. Nov. 16, 2006)..............................8

*Lowe v. City of Monrovia*
775 F.2d 998, 1009 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986)...............12

*M.M. & E.M. v. Lafayette Sch. Dist.*
No. 09-4624, 2012 WL 3257662 (N.D. Cal. Aug. 8, 2012)..............................7

*Morales v. City of San Rafael*
96 F.3d 359 (9th Cir. 1996)..................................................................21

*Moss v. AP*
956 F. Supp. 891 (C.D. Cal. 1996)..........................................................7

*No Barriers, Inc. v. Brinker Chili's Texas, Inc.*
262 F.3d 496 (5th Cir. 2001)..................................................................6

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*
483 U.S. 711 (1987)...........................................................................21

*Peters v. Winco Foods, Inc.*
320 F. Supp. 2d 1035 (E.D. Cal. 2004).........................................4, 7, 17, 18

*Poland v. Chertoff*
494 F.3d 1174 (9th Cir. 2007).................................................................13

*Ramirez v. Merced County*
    No. 1:11-cv-531, 2013 WL 4780440 (E.D. Cal. Sept. 5, 2013)..........................................7

*Reeves v. Sanderson Plumbing Prods.*
    530 U.S. 133 (2000).........................................................................................................10

*Riverside v. Rivera*
    477 U.S. 561 (1986)...........................................................................................................5

*Roadway Express Inc. v. Piper*
    447 U.S. 752 (1980).........................................................................................................18

*Rosen v. Thornburgh*
    928 F.2d 528 (2nd Cir. 1991)..........................................................................................11

*Saman v. Robbins*
    173 F.3d 1150 (9th Cir. 1999)...........................................................................................6

*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*
    74 Cal. App. 4th 1211 (Cal. App. 2d Dist. 1999)..........................................................7-8

*Schnidrig v. Columbia Machine, Inc.*
    80 F.3d 1406 (9th Cir. 1996)...........................................................................................10

*Sealy, Inc. v. Easy Living, Inc.*
    743 F.2d 1378 (9th Cir.1984)..........................................................................................23

*Sischo-Nownejad v. Merced Community College Dist.*
    934 F.2d 1104 (9th Cir. 1991).....................................................................................10-11

*Summers v. Teichart & Son, Inc.*
    127 F.3d 1150 (9th Cir. 1997)...........................................................................................4

*Taybron v. City & County of San Francisco*
    341 F.3d 957 (9th Cir. 2003)...........................................................................................10

*Taylor v. Principal Financial Group, Inc.*
    93 F.3d 155 (5th Cir. 1996).............................................................................................12

*Traditional Cat Ass'n v. Gilbreath*
    340 F.3d 829 (9th Cir. 2003)...........................................................................................22

*Tutor-Saliba Corp. v. City of Hailey*
    452 F.3d 1055 (9th Cir. 2006)...........................................................................................7

*U.S. Postal Service Bd of Governors v. Aikens*
    460 U.S. 711 (1983)..........................................................................................................11

*Vernon v. City of Los Angeles*
    27 F.3d 1385 (9th Cir. 1994)..................................................................6

*Wallis v. J.R. Simplot Co.*
    26 F.3d 885 (9th Cir. 1994)..................................................................11

*Warren v. City of Carlsbad*
    58 F.3d 439 (9th Cir. 1995)..................................................................11

*Webb v. Ada County*
    285 F.3d 829 (9th Cir. 2002)................................................................21

*West Coast Theater Corp. v. City of Portland*
    897 F.2d 1519 (9th Cir. 1990)..............................................................17

**Statutes**
28 U.S.C. § 1927.....................................................................................8, 17

42 U.S.C. § 2000e-5(k)................................................................................4

Cal. Gov. Code § 12965(b)......................................................................4-5

**Federal Rules**
Fed. R. Evid. 408..................................................................................15-16

# I.      INTRODUCTION

In the instant action Defendant seeks in excess of $200,000 in attorney's fess against a disabled employee who allegedly could not submit direct evidence at summary judgment regarding the discriminatory motives of the decision-makers involved in his adverse employment actions.

Specifically, Defendant seeks approximately $200,000 in fees and costs against Plaintiff's counsel pursuant to 28 U.S.C. §1927 and the Court's inherent power for bad faith conduct, and against Plaintiff pursuant to 42 U.S.C. § 12205 and Cal. Gov. Code § 12965(b) as a prevailing party. Defendant's counsel alleges that "[f]rom Day One in this action, Plaintiff indisputably lacked any evidence to prove an essential element of his disability discrimination claims against Defendant – that Defendant's decision makers were aware of his alleged disability."

Many of the factual allegations identified in Defendant's Motion would require the Court to make elusive credibility determinations regarding the knowledge and motives of the decision-makers who demoted Plaintiff and who were never subjected to cross-examination in the instant action.  At the summary judgment stage the Court was precluded from making these types of findings and it would be unfair to make such a ruling after summary judgment without subjecting the alleged decision-makers to cross-examination.   More importantly, and contrary to Defendant's position, there is substantial evidence uncovered during discovery that the decision-makers had knowledge of Plaintiff's disability.

Furthermore, what is troubling about Defendant's Motion is that Defendant fails to cite any authority to support its position that a disabled Plaintiff can be sanctioned for failing to produce direct evidence regarding the decision-maker's knowledge of Plaintiff's disability and/or direct evidence regarding a decision-maker's motives for taking certain adverse employment actions.  Defendant attempts to buttress its quest for fees by disclosing Plaintiff's settlement

1

negotiations in a blatant violation of Fed. R. Evid. 408.  As discussed herein, in this quest for sanctions,  Defendant's counsel has presented meritless arguments to this Court, has failed to substantiate its arguments by reference to any supporting authority, and has failed to bring to the Court's attention the existence of controlling authority that conflicts with those arguments.

## II.     FACTUAL BACKGROUND

In November  2001,  Plaintiff suffered a severe stress reaction following severe threats in the workplace, and was later diagnosed with post-traumatic stress disorder ("PTSD") (Patten Decl., Exh. "B", United/Bonillas 000557).    Starting in November, 2001, Plaintiff took periodic disability/workers compensation leave for work-related stress and was later diagnosed with PTSD, receiving a 15% permanent partial disability to his psyche (Bonillas Decl., Exh. "A"). In September, 2002, Plaintiff's supervisor, Norman Walcott, signed off on Plaintiff's PTSD Workers' Compensation form  (Patten Decl., Exh. "B", United/Bonillas 000586).

In June, 2003, United received notice that Plaintiff had received permanent disability benefits for the PTSD.  (Patten Decl., Exh. "B", United/Bonillas 000516-000517).

Beginning in 2010, Plaintiff investigated harassment and retaliation in the workplace by other employees and made several reports to Labor Relations and Human Resources departments concerning an employee's harassing and discriminatory conduct, conduct that involved calling local law enforcement.  (Patten Decl., Exh. "A", Bonillas Depo., 243:8-246:10).  This resulted in Plaintiff being shaken up, reliving the 2001 violence that resulted in his PTSD.  In 2010 and 2011, Plaintiff reported workplace violence issues in the workplace concerning Scheele, and testified that he informed his supervisor of his PTSD. (Patten Decl., Exh. "A", Bonillas Depo., 127:5-132:19).  Bonillas told them the reason he was taking longer to complete tasks might be because of his PTSD and being rattled by the workplace violence.  *Id.*

A few months before his demotion, Plaintiff was told that if he did not stop the reports, that he would be terminated. (Patten Decl., Exh. "A", Bonillas Depo., 158:2-5)

In October 2010, Plaintiff was verbally counseled by his manager, in part, for being forgetful. Plaintiff informed that the forgetfulness might be a symptom of the permanent long-term disability from the 2001 PTSD. (Patten Decl., Exh. "A", Bonillas Depo., 127:5-132:19).

The manager immediately ended the meeting. This same manager gave Plaintiff his first negative performance evaluation in early 2011. United then required Plaintiff to reapply for his position as part of United's Talent Selection Process. Plaintiff alleged in his Complaint that United used the Talent Selection Process as a way to demote individuals in a discriminatory or retaliatory fashion and that Defendant's motives for demoting him were unlawful. Specifically, Plaintiff alleged that Defendant's motives for demoting him were: (1) at the time of the merger, he was engaged in a protected activity - opposing harassment and discrimination in the workplace; and (2) the new management team did not want supervisors of Plaintiff's race, national origin, and disability status. Notably, through the discovery process, Plaintiff uncovered evidence that Hispanic employees were treated poorly and that the only two supervisors in the whole division who lost their jobs were both Hispanic.

On December 31, 2012, Plaintiff filed the instant action alleging that he was displaced from his position in part because of his disability. The conduct of discovery in this matter was difficult, based upon Defendant's counsel's violations of Local Rule 30-1 in the scheduling of depositions, and the extreme difficulty Plaintiff had in obtaining evidence related to Defendant's proffered legitimate business reason: the Talent Selection Process. (See, e.g. Dkt # 69.)

Plaintiff's former supervisors had been spread across the country in a revolving-door of supervisors around the Talent Selection Process, Wagner having moved to Virginia and Holder to

3

Texas.  Defendant's counsel's refusals of accommodations IN the process of discovery resulted in massive increases in the costs of litigation. (Patten Decl., ¶¶6-9)

On February 11, 2014, Defendant filed its Motion for Summary Judgment on all of Plaintiff's claims. The Court continued the hearing on Defendant's Motion for Summary Judgment on two occasions. On August 18, 2014 the Court granted Defendant's Motion for Summary Judgment. On September 2, 2014, Defendant filed its Motion for Attorneys' Fees, set for hearing on October 14, 2014. (Dkt #149). Defendant's Motion seeks sanctions and an award of fees and costs just shy of $200,000 for Plaintiff's disability discrimination claim alone. Defendant's Motion has no basis in law or fact.

## III.   ARGUMENT

### A.   LEGAL STANDARD FOR SHIFTING FEES IN DISCRIMINATION CASES

The American Rule is that each party bears his own litigation expenses, including attorney's fees, regardless of whether he wins or loses. *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). Congress, however, has created certain fee-shifting statutes.

#### 1.   *Standard For Shifting Fees For Prevailing Defendant In Discrimination Case*

The Ninth Circuit has applied the Title VII standard for awarding fees to ADA and FEHA claims. *See Summers v. Teichart & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997); *Peters v. Winco Foods, Inc.,* 320 F. Supp. 2d 1035, 1037 (E.D. Cal. 2004); *Bond v. Pulsar Video Prods.,* 50 Cal. App. 4th 918, 921, 923-25 (1996). Title VII, Section 1988, and FEHA permit, but do not mandate, fee shifting. Title VII, 42 U.S.C. § 2000e-5(k), states that: "[i]n any action or proceeding under this subchapter, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs" (emphasis added). Section 12965(b) of the California Government Code states that: "[i]n civil actions brought under this

4

section [Fair Employment and Housing Act], the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees" (emphasis added).  In civil rights actions, the Supreme Court has stated that:

> When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority. He therefore should ordinarily recover an attorney's fee from the defendant — the party whose misconduct created the need for legal action. Fee shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights, and holds to account a violator of federal law.

*Fox*, 131 S. Ct. at 2213 (internal citations and quotation marks omitted).  The case law is abundantly clear, however, that attorney's fees to prevailing defendants, are awarded "only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978).  This is because, even when unsuccessful, civil rights suits:

> provide an important outlet for resolving grievances in an orderly manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes . . . . Our system of awarding attorneys fees in civil rights cases is in large part dedicated 'to encouraging individuals injured by . . . discrimination to seek judicial relief.' *Harris v. Maricopa County Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011). Accordingly, the great weight of authority and strong public policy considerations

militate against an award of fees to a prevailing defendant. This is because "[f]ees are regularly awarded to prevailing plaintiffs who obtain some significant measure of relief but not to prevailing defendants." *Hughes v. Rowe*, 449 U.S. 5, 15-16, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (per curiam).

The case law is extremely well-established that awards of attorneys fees to prevailing defendants under Title VII are extremely rare. "The Supreme Court teaches that civil rights plaintiffs often secure important social benefits beyond  the individual remedy." *Doe v. Univ. of the Pac.,* 2010 U.S.Dist LEXIS 130017 *9 (E.D. Cal. Dec. 8, 2011), *citing Riverside v. Rivera,* 477 U.S. 561, 573 (1986). "To... assess attorney's fees against plaintiffs simply because they do

not finally prevail would substantially add to the risks inherent in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Hughes*, 449 U.S. at 14-15. "Thus, attorneys' fees to a prevailing defendant in civil rights litigation should be awarded only in extraordinary circumstances so as not to conflict with settled precedent and Congressional policy." *Doe*, 2010 U.S. Dist. LEXIS 130017, at * 9-10. Defendant's motion cites none of the foregoing controlling authority.  Such a failure demonstrates a lack of candor in an effort to seek an unlawful attorney's fee award.

Controlling Ninth Circuit authority holds that a defendant in a civil rights action is not entitled to an award of attorneys' fees merely because it prevails on the merits of the case. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.), cert. denied, 513 U.S. 1000 (1994). The claim must be "groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978). "[T]he law does not permit an award of fees...simply because [defendant] succeeded on the motion for summary judgment." *Doe,* 2010 U.S. Dist. LEXIS 130017, at *3-4.  Again, Defendant fails to cite any of the foregoing controlling authority, demonstrating a breach of the duty of candor in an effort to seek an unlawful attorney's fee award.

Defendant cites to cases where a prevailing party was awarded fees because the plaintiff had failed to sue the proper party.  These are not on point. *Saman v. Robbins,* 173 F.3d 1150 (9th Cir. 1999) (awarding fees to prevailing officer in wrongful death action who was not involved in the shooting but only participated in the investigation where the record was clear that the officer was not a proper defendant and that the claims against him were groundless); *No Barriers, Inc. v. Brinker Chili's Texas, Inc*. (262 F.3d 496 (5th Cir. 2001) (awarding small portion of fees where nonprofit repeatedly failed to sue the proper party which unreasonably continued the litigation.)

Defendant also cites to cases which do not relate to employment discrimination. *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (finding claim was frivolous where an individual alleged that his substantive due process rights were violated when he was not allowed to land a large aircraft at the airport near his vacation home, when he was not deprived of any access since he had other, alternative aircraft which he could utilize.); *M.M. & E.M. v. Lafayette Sch. Dist.*, No. 09-4624, 2012 WL 3257662 (N.D. Cal. Aug. 8, 2012) (case involving cross motions for summary judgment under Rehabilitation Act and IDEA.)

None of the remaining cases by Defendant provide authority to award fees in this matter. *Ramirez v. Merced County,* No. 1:11-cv-531, 2013 WL 4780440 (E.D. Cal. Sept. 5, 2013) (court granting unopposed motion for summary judgment and awarded sanctions under §1927 and court's inherent power where disability discrimination plaintiff filed frivolous lawsuit, admitting on multiple occasions that she could not perform the essential functions of her job and that she had retired and had not suffered an adverse employment action, and acting in bad faith by ultimately not opposing the employer's motion for summary judgment.); *Peters*, 320 F. Supp. 2d at 1037 (declining to award fees under 42 U.S.C. § 1924 even where an individual sued 30 companies for ADA violations using "form" complaints with "boilerplate" ADA violations, the majority of which he abandoned or were not covered under the ADA); *Moss v. AP,* 956 F. Supp. 891, 895 (C.D. Cal. 1996) (finding that a claim became frivolous after the plaintiff admitted his entire cause of action was based on his "own personal belief" that he had been discriminated against, noting that the plaintiff failed to conduct "even minimal discovery" concerning the business justification or ages of those who replaced him and that, if he had, he would have discovered that half of the six individuals who replaced him were over age 40 and that one was his age.); *Saret-Cook v. Gilbert, Kelly, Crowley & Jennett,* 74 Cal. App. 4th 1211 (Cal. App. 2d Dist. 1999) (affirming award of attorneys fees in case described as "nightmarish aftermath of a

failed office romance...similar to the movie Fatal Attraction" where district court's decision was amply supported by a voluminous record of egregious, vexatious, extortionate conduct by plaintiff who recognized her conduct may have been fueled by poor mental health.); *Bond*, 50 Cal.App.4th 918 (awarding fees after jury verdict where defendant had brought demurrer, motion to dismiss, and attempted to settle with plaintiff for more than the jury awarded plaintiff); *Louie v. Carichoff*, No. 05-0984, 2006 WL 3349521 (E.D. Cal. Nov. 16, 2006) (awarding fees after ADA case was dismissed, noting that the suit was brought in bad faith so that the federal court would interfere with a related state court case, depriving the defendant of its procedural rights.)

### 2.     *Standard For Sanctions Pursuant to Section 1927 and The Court's Inherent Powers*

United also seeks fees under Section 1927 of Title 28 of the United States Code, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.*  Federal courts also have inherent powers to assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). "[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id.* at 46 (internal quotation marks omitted). While "[r]ecklessness suffices for [Section] 1927 sanctions . . . sanctions imposed under the district court's inherent authority require a bad faith finding." *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 4 (9th Cir. 2010).

/ / /

/ / /

**B.    DEFENDANT'S REQUEST FOR FEES AND/OR SANCTIONS SHOULD BE DENIED BECAUSE PLAINTIFF HAS PRESENTED EVIDENCE THAT THE DEFENDANT DECISION-MAKERS HAD KNOWLEDGE OF HIS DISABILITY.**

The issues in the instant action relate to (a) who made the decisions that led to Plaintiff losing his supervisor position; and (b) what the motives of those decision-makers were.  Plaintiff alleged that over a six-month period, several individuals were involved in the process of removing Plaintiff from his supervisor position: (1) Ken Holder, author of Plaintiff's December, 2011 "underperforms" performance review which disqualified Plaintiff from interviewing for talent selection; (2) Shannon Wagner, who upheld the poor performance review in April 2012 and put the position up for Talent Selection; and (3) Sinasi Stewart, who interviewed Plaintiff for Talent Selection with knowledge that Plaintiff had issues with a medical clearance.

Plaintiff chose to focus its discovery efforts and the thrust of its opposition to summary judgment on the direct evidence of retaliation[1] and the statistical evidence of race[2].  The Court did not see that evidence the same way Plaintiff did, and did not allow Plaintiff to present the late-produced documentary evidence that Caucasian supervisors with poor performance reviews retained their positions while only the Hispanic supervisors lost their positions.  (See Dkt# 133, p. 3-5).  The fact that Plaintiff chose to focus discovery and briefing on his strongest claims has no bearing on whether the disability claims were frivolous.

Defendant alleged that its motives for demoting Plaintiff were poor performance and a poor interview during the Talent Selection Process.  Plaintiff contends in his appeal to the Ninth

---

1   Shannon Wagner threatened Plaintiff with his job if he did not stop the HR complaints about Karl Scheele (Dkt # 75, p. 17)

2   After the Court granted Plaintiff' motion to compel production of documents, Plaintiff attempted to put those documents, which showed that Caucasian supervisors who had poor performance kept their positions while only Hispanic supervisors were demoted, but the Court did not allow the evidence.  (Dkt # 133, Dkt # 140.).  Plaintiff has appealed that ruling to the Ninth Circuit Court of Appeals (Dkt #147).

9

1   Circuit that the Court at summary judgment resolved these issues by making impressible

2   credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)

3   ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

4   inferences from the facts are jury functions, not those of a judge.")[3]   Plaintiff will contend on

5   appeal that  the court did not view all reasonable inferences from the underlying facts in the light

6   most favorable to the party opposing the motion.    Resolving the issues surrounding Defendant's

7   motives for removing Plaintiff from his supervisor position, especially when that decision

8   involved a revolving-door of decision-makers required the Court to make impermissible

9   credibility determinations.

10       In the employment context, the U.S. Supreme Court, in *Reeves v. Sanderson Plumbing*

11   *Prods.*, 530 U.S. 133 (2000), articulated the implications of this rule as it pertains to evaluating

12   the testimony of interested witnesses: "[A]lthough the court should review the record as a whole,

13   it must disregard all evidence favorable to the moving party that the jury is not required to

14   believe. That is, the court should give credence to the evidence favoring the nonmovant as well

15   as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to

16   the extent that the evidence comes from disinterested witnesses." *Id*. at 151.  *See Schnidrig v.*

17   *Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (courts require little evidence to

18   deny summary judgment in a discrimination case because the ultimate question is one that can

19   only be resolved through a searching inquiry – one that is most appropriately conducted by the

20   factfinder, upon a full record) (citations omitted); *see also Lam v. University of Hawaii,* 40 F.3d

---

[3]   "Findings of fact should be eschewed in determining whether summary judgment should be
granted." *Taybron v. City & County of San* Francisco, 341 F.3d 957, 959 n.2 (9th Cir. 2003)
(holding, in the context of an employer's summary judgment motion on plaintiff's Title VII
claims, that the district court erred in "weighing . . . the evidence and making findings rather
than focusing on whether genuine issues of material fact are in dispute").

1551, 1563 (9th Cir. 1994) (quoting *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 111 (9th Cir. 1991).

Summary judgment is ordinarily not appropriate in an employment discrimination case on "any grounds relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination." *Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir. 1995); *cert. denied,* 516 U.S. 1171, 116 S. Ct. 1261, 134 L. Ed. 2d 209 (1996).[4] Courts have recognized that in discrimination cases, an employer's true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage. *See U.S. Postal Service Bd of Governors v. Aikens,* 460 U.S. 711, 716, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "there will seldom be 'eyewitness' testimony as to the employer's mental processes").[5] Viewing the evidence in the light most favorable to Plaintiff and disregarding all evidence favorable to the moving party, the Court must find that there are genuine issues of material fact in the instant action.[6]

---

4   "Proving intentional discrimination can be difficult because there will seldom be eyewitness testimony as to the employer's mental processes. It is rare for a plaintiff to produce direct evidence or smoking gun evidence of discrimination." *Heard v. Lockheed Missiles & Space Co., Inc.,* 44 Cal. App. 4th 1735, 1748, 52 Cal. Rptr. 2d 620 (1996).(internal quotation marks, brackets and citations omitted). "Thus, plaintiffs may demonstrate via indirect or circumstantial evidence that they were the victims of discrimination." *Id.* at 1749.

5   Because an employer is very unlikely to leave a "paper trail or 'smoking gun' attesting to discriminatory intent," a disparate treatment plaintiff must often "cumulatively undercut" defendants' proffered explanation by presenting an accumulation of  circumstantial evidence. *Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85 (2nd Cir. 1990); accord *Rosen v. Thornburgh,* 928 F.2d 528 (2nd Cir. 1991); *see also U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S. Ct. 1478, 75 L.Ed. 2d 403 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes.").

6   Furthermore, "[t]he requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 659 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)); *see also Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1124 (9th Cir. 2000) (plaintiff in employment discrimination action need produce very little evidence in order to overcome employer's

11

Defendant's motion misstates the law by arguing that a disability discrimination claim is frivolous unless Plaintiff provides direct evidence that the "decision-makers" were aware of his disability. In *Brundage v. Hahn,* 57 Cal. App. 4th 228 (1997), the court stated that a disabled claimant bringing suit under the FEHA "can establish a prima facie case by proving that: (1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability. [Citation.]" *Id*. at 236, fn. omitted. The claimant need not prove a causal connection between the disability and the adverse employment action by direct evidence.  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254-255 (Cal. App. 2d Dist. 2000).  A plaintiff can establish the latter element for purposes of a wrongful discharge or adverse employment action claim by showing that " 'he or she was subject to an adverse employment action' " and that " 'he or she was replaced by a non-disabled person or was treated less favorably than  non-disabled employees.' [Citation.]" *Id*. at 236, fn. 1 (quoting *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 162. (5th Cir. 1996)).

Plaintiff testified that he told a manager at United about his PTSD diagnosis. (Dkt #149 at page 5.) Plaintiff also testified in his deposition that he told Kenneth Holder and Kevin Sklanka about his PTSD, and that Kevin Sklanka informed Bonnie Turner about his disability. (*See* Exhibit "A" to Patten Decl., Bonillas Depo., 129:25-130:19, 131:1-22; 132:6-133:16.) Furthermore, Defendant produced an email from May 31, 2011, prior to Plaintiff's interview for the Supervisor position, which demonstrates that Sinasi Stewart, one of the alleged "decision-makers" was aware of an issue with Plaintiff's medical clearance. (Patten Decl., Exhibit "B" United/Bonillas-002631.)   Defendant's fees motion attempts to transform an issue of credibility into sanctionable conduct.  This is wholly unwarranted and not supported by the record.

---

motion for summary judgment); *Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir. 1985), *amended,* 784 F.2d 1407 (9th Cir. 1986) (stating that very little additional evidence is required to raise a genuine issue of fact regarding motive, and concluding that summary judgment is ordinarily inappropriate once a prima facie case has been established).

Furthermore, Plaintiff also alleged that he suffered an adverse employment action when he received his first negative performance review. (Holder Decl. ¶ 4; Fulton  Decl. ¶ 3, Dkt # 57.) This negative performance review initially disqualified Plaintiff from even interviewing to keep his supervisor position.  As such, the poor performance review, by disqualifying him from keeping his position through the Talent Selection Process, was itself an actionable adverse action. Defendant does not dispute that Plaintiff testified that he told Kenneth Holder about his PTSD diagnosis.  (Dkt #149 at 5.) At summary judgment, Defendant did not dispute that Mr. Holder gave Plaintiff his very first negative performance review. (Holder Decl. ¶ 5.) Therefore, it is evident that the employer knew about Plaintiff's PTSD at the time of the adverse employment action.

More importantly, the decision-makers' lack of knowledge regarding Plaintiff's protected class or activity does not insulate a Defendant from liability. "[I]f a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decision-maker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir.2007) This standard is consistent with what the Ninth Circuit suggested in previous Title VII retaliation cases. *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) ("[e]ven if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the [adverse employment] decision."); *Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent,

takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus.")

A plaintiff's failure to meet its burden of proof is not in itself a basis for an award of attorney's fees, and Defendant's motion proffers no authority holding as much.  All of the foregoing facts, whether or not presented convincingly at summary judgment, have been known by United since before this lawsuit began.  United cannot now seek sanctions and fees by omitting the fact that at least one "decision-maker" was aware of issues with Plaintiff's medical clearance (a fact which United produced during this litigation) and the fact that Kenneth Holder, Kevin Sklanka and Bonnie Turner, all of whom participated in and approved the Talent Selection were made aware of Plaintiff's PTSD.

Defendant has failed to give any factual basis for the Court to sanction Plaintiff's counsel. Defendant states that Plaintiff engaged in "discovery tactics that resulted in attorneys' fees many times over what they should have been" and that Plaintiff's counsel's "tactics were tantamount to a 'scorched earth' approach in hopes of forcing a settlement of a wholly meritless action." (Dkt #149 at page 10.) These statements are purely conclusory,  and the fact that Plaintiff served discovery requests, took depositions, and prevailed on a motion to compel document production cannot form the basis of a Motion for Attorneys' Fees.

Defendant argues that Plaintiff's claims were frivolous because Plaintiff testified that he told Holder about his PTSD. However, Plaintiff also testified in his deposition that he told Kenneth Holder and Kevin Sklanka about his PTSD, and that Kevin Sklanka informed Bonnie Turner, a "decision maker" about his disability. (See, Patten Decl. Exhibit "A" , Bonillas Depo 129:25-130:19, 131:1-22; 132:6-133:16.) Defendant also produced an email from May 31, 2011 which demonstrates that Sinasi Stewart, another "decision-makers," was aware of an issue with Plaintiff's medical clearance. (Patten Decl., Exhibit "B" United/Bonillas-002631.)   Today,

14

1    Plaintiff is still operating under work restrictions that limit his lifting capacity, and United has

2    accommodated that disability.  (Bonillas Decl., ¶ 3).  Therefore, Defendant's claim for sanctions

3    under Section 1927 and the Court's inherent power lacks any factual basis and must be denied.

4         Defendant's Motion for Attorneys' Fees is unwarranted and fails to allege facts to

5    demonstrate that Plaintiff's disability claims were frivolous, let alone that Plaintiff's counsel

6    acted recklessly in bringing them. If Defendant's counsel truly did believe Plaintiff's claims to be

7    frivolous, it had multiple avenues to bring its position to the court. Defendant failed to make a

8    Rule 11 motion at any point during this litigation and never filed a motion to dismiss. Instead,

9    Defendant litigated this case as a case that had merit, as it states "devot[ing] hundreds of hours to

10   investigating and litigating a number of factual issues" (Dkt # 149, page 1)

11        Defendant's Motion is unsupported by the factual record in this matter. As described

12   above, Plaintiff's claims were not frivolous, since there was circumstantial evidence that United

13   was aware of Plaintiff's disability.  Courts have rarely found that a claim was frivolous when

14   brought.  *Banuelos v. Waste Connections, Inc.,* 2013 U.S. Dist. LEXIS 130753, *14-15 (E.D. Cal.

15   Sept. 11, 2013) (holding claim brought in good faith even though "[n]ot all of the elements of a

16   prima facie case of each of the pled causes of action [were] identified in the Complaint, the

17   DFEH Charge, or the EEOC Charge...the collective allegations...do not indicate wholly baseless

18   or unreasonable claims."); *Cummings v. Benco Bldg. Servs.*, 11 Cal.App.4th 1383 (1992)

19   (Holding trial court abused its discretion when it awarded the defendant employer attorneys fees

20   because the "cause of action was not obviously contrary to the undisputed facts or well

21   established legal principles that specifically preclude recovery for the type of injury alleged."

22        Defendant's argument that Plaintiff's counsel finally acknowledged the baselessness of

23   Plaintiff's disability claims in a settlement offer (Dkt #149, page 7) is both false and violates Fed.

24   R. Evid. 408, which provides in relevant part:

15

Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim;

*Id.* Plaintiff specifically objects to paragraphs 15 and 16 of the Thompson Declaration (Dkt#149-1) and Exhibit 4 thereto as inadmissible under Fed. R. Evid. 408 and requests that the Court strike the reference to settlement communications.  As part of the parties' settlement negotiations, Plaintiff made a strategic decision to tell a more precise narrative at trial (Patten Decl., ¶4-5)  The settlement negotiation does not demonstrate that the claims were baseless and Defendant's counsel should be admonished for filing patently inadmissible evidence.

Defendant does nothing more than rely on the fact that the case was dismissed at summary judgment and conclusory allegations to support its Motion for Attorneys' Fees. However, the fact that a "complaint...cannot survive a motion to dismiss does not, without more, entitle the defendant to attorney's fees." *Hughes,* 449 U.S. at 5.  To the contrary, the case law is clear that fees can only be provided in extraordinary circumstances of which Defendant has failed to offer any evidence or even articulate any facts. *Doe*, 2010 U.S. Dist. LEXIS 130017, at *9-10. Defendant has failed to demonstrate any extraordinary circumstances.

Defendant has long been on notice of Plaintiff's PTSD, and his permanent lifetime partial disability, as that disability occurred during the course and scope of Plaintiff's employment. (Bonillas Decl.., Exh. "A").  For Defendant to now move for attorneys fees in the face of its own records and Plaintiff's own testimony is unwarranted and sanctionable.

/ / /

/ / /

/ / /

**C.    DEFENDANT'S MOTION FOR FEES AND/OR SANCTIONS MUST BE DENIED BECAUSE DEFENDANT HAS CITED NO AUTHORITY TO SUPPORT ITS POSITION THAT A DISABLED PLAINTIFF CAN BE SANCTIONED FOR NOT PRESENTING DIRECT EVIDENCE REGARDING DECISION-MAKERS' KNOWLEDGE OF PLAINTIFF'S DISABILITY.**

Defendant's Motion for Attorneys Fees and Sanctions is completely devoid of citation to any binding precedent that a civil rights Plaintiff can be sanctioned for not proving one element of one claim at summary judgment, particularly on one which is contingent upon credibility determinations.

28 U.S.C. § 1927 authorizes attorney's fees reasonably incurred as sanctions against an attorney who multiplies the proceeding in any case unreasonably or vexatiously. 28 U.S.C. 1927. The overwhelming authority which Defendant should have reviewed prior to filing its motion holds that sanctions under Section 1927 are justified only in the most egregious of cases. *Doe*, 2010 U.S. Dist. LEXIS 130017, at •3-4. In order to impose sanctions under section 1927, the court must make a finding that the attorney acted in bad faith. *West Coast Theater Corp. v. City of Portland,* 897 F.2d 1519, 1528 (9th Cir. 1990).   "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Peters .,* 320 F. Supp. 2D at1041, citing *West Coast Theatre Corp.* 897 F.2d at 1528.   Defendant's motion does not even attempt to make a showing of bad faith because it knows it cannot makes such a showing.

Defendant bases its claim for fees under §1927 in part on Plaintiff's initial pleading, contrary to controlling Ninth Circuit authority:  "Because sanctions under § 1927 are authorized only for the unreasonable multiplication of proceedings, 'applies only to unnecessary filings and tactics once a lawsuit has begun. . . [and] cannot be applied to an initial pleading.'" *In re Keegan Mgmt. Co. Sec. Lit.*, 78 F.3d 431, 435 (9th Cir. 1996).

Defendant fails to cite to any legal authority for sanctioning Plaintiff's counsel. The only cases cited by Defendant fail to support Defendant's position. Defendant cites to *Lahiri v. Universal Music & Video Dist. Corp.*, 606 F.3d 1216 (9th Cir. 2010) where a court awarded sanctions to a prevailing defendant in a copyright infringement case where the court found that the plaintiff had litigated the action in bad faith for five years, noting that the attorney used a "manipulative tactic" by retaining the judge's former law firm in an attempt to cause the judge's recusal. Defendant also cites to *B.K.B. v. Maui Police Department*, 276 F.3d 1091 (9th Cir. 2002), where an employer's counsel was sanctioned after recklessly presenting testimony in violation of Federal Rules of Evidence Section 412 concerning an employee's sexual history after earlier warned by the trial court to avoid bringing such testimony. These cases demonstrate that a court may sanction an attorney for manipulative tactics and violating the court's instruction, none of which occurred here.

In fact, there is direct contrary authority awarding sanctions under Section 1927 in this situation. Even where a plaintiff filed over thirty "form" complaints against various businesses under the ADA, alleging substantially similar boilerplate violations, many of which were abandoned by the plaintiff, the Court has refused to sanction counsel. *Peters*, 320 F. Supp. 2D 1035.

Inherent power sanctions are available only if the court specifically finds bad faith or conduct tantamount to bad faith. *Roadway Express Inc. v. Piper* 447 US 752, 767 (1980); *B.K.B.*, 276 F.3d at 1108. As it did with its Section 1927 argument, Defendant's Motion is completely devoid of any authority for the proposition that a Plaintiff's failure to meet its burden of proof on one element of one claim at summary judgment is tantamount to bad faith. Defendant's Motion for Attorneys' fees is as devoid of evidence as it is devoid of legal precedent, citing to no specific conduct by Plaintiff the would even come close to supporting a finding of bad faith.

Defendant cites to *Cotterill v. City & County of San Francisco*, No. 08-2295, 2010 WL 1223146 (N.D. Cal. March 10, 2010) and states that fees can be awarded where "plaintiff's counsel's tactics proliferated proceedings...after it was clear claim lacked legal and factual support." In that case, the plaintiff filed a suit alleging that her civil rights had been violated relating to her detention and treatment at a mental health hospital. The court awarded fees pursuant to 28 U.S.C. Section 1927 noting that plaintiff's counsel was "vexatious" that he "failed to comply with this Court's standing orders and rulings...consistently filed rambling, dilatory and legally deficient submissions...was unprofessional...in his conduct before this Court, and most importantly, in relation to his representation of his client." *Id*. at *3-4.The court also noted that the testimony of two witnesses proved that plaintiff's testimony was untrue and that counsel acted recklessly in relying solely on plaintiff's testimony concerning the facts. *Id*. at *4 Defendant has not alleged any facts that rise even close to the level of unprofessional and sanctionable conduct in *Cotterill*.

## D.   DEFENDANT'S FAILURE TO MITIGATE SHOULD PRECLUDE AN AWARD FOR ATTORNEY'S FEES.

Based upon the foregoing it is clear that this motion was a waste of United's money and the Court's time.  "A sanction for a frivolous filing is in the nature of a tort remedy for negligent (in aggravated cases, intentional) misconduct, . . . and when a tort victim fails to take reasonable steps to mitigate his damages, those damages are either cut down or eliminated altogether under the principle of "avoidable consequences," *Brooks v. Allison Div. Of General Motors Corp.,* 874 F.2d 489, 490 (7th Cir. 1989) (internal citations omitted).  The duty to mitigate is already recognized in cases under Fed.R.Civ.P. 11, *see Dubisky v. Owens*, 849 F.2d 1034, 1036 (7th Cir. 1988); *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1439 (7th Cir. 1987).  A court must deny an otherwise meritorious motion for sanctions because the movant failed to take

1

2

reasonable steps to mitigate the burdens imposed on it by the alleged frivolous pleading for

which sanctions are sought.

3

4

5

6

7

If United had evidence of that Plaintiff's claims were frivolous, it had several tools at its

disposal under the Federal Rules, which it did not use.  The court in *Doe*, 2010 U.S. Dist. LEXIS

130017, at *9-22  denied a motion for attorney's fees because  "significantly, defendant did not

file a motion to dismiss. Fed. R. Civ. P. 12(b)(6)."  The Court went on to state,

8

9

10

11

12

13

> if defendant believed plaintiff's claims were truly frivolous, defendant would
> likely have sought dismissal, or at a minimum, narrowed the issues via such a
> motion. Defendant did not do so. Indeed, at no point in the course of the litigation
> did defendant make a Rule 11 motion or any informal request that plaintiff
> dismiss the lawsuit. Instead, defendant engaged in over six months of extensive
> discovery, and only after discovery closed, did it file a motion for summary
> judgment (just one month before the dispositive motion deadline). From these
> facts, it appears defendant vigorously litigated this case as if plaintiff's claims had
> merit.

14

15

16

17

18

19

*Id.*  Here, Defendant United neither made a Rule 11 safe harbor motion nor filed a motion to

dismiss.   Instead, United litigated this action as a case that had merit, deposing Plaintiff twice,

conducting extensive discovery including multiple sets of Interrogatories and Requests for

Production of Documents, and meeting and conferring extensively over discovery disputes.

(Patten Decl., ¶¶  6-8).  Defendant vigorously litigated this case and never put Plaintiff on notice

that it thought the case was "frivolous".

20

21

22

**E.     DEFENDANT HAS FAILED TO SUBMIT EVIDENCE SUFFICIENT TO
SUPPORT AN AWARD OF FEES, AND HAS NOT ESTABLISHED THAT
THE AMOUNT CLAIMED IS APPROPRIATE.**

23

24

25

26

Assuming, *arguendo*, that the Court entertains Defendant's claim for fees, reasonable

attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S.

424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  The Ninth Circuit considers the following

factors in determining a reasonable fee:

27

28

(1) the time and labor required, (2) the novelty and difficulty of the questions
involved, (3) the skill requisite to perform the legal service properly, (4) the

20

preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*See I.T. v. Dep't of Educ.,* 2014 U.S. Dist. LEXIS 60127 at *10 (D. Haw. Feb. 27, 2014) (citing *Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67, 70 (9th Cir. 1975). Factors one through five are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996). Further, the sixth factor, whether the fee is fixed or contingent, *may not* be considered in the lodestar calculation. *See Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987).   Defendant has failed to offer admissible evidence sufficient to support a lodestar calculation[7].

### 1.    Rates

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County,* 285 F.3d 829, 840 & n.6 (9th Cir. 2002).   A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community for "similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). To inform and assist the court in the exercise of its discretion, "[t]he party seeking an award of fees should submit evidence supporting the . . . rates claimed." *Hensley,* 461 U.S. at 433; see also *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).   Here, Defendant has presented no

---

7  Plaintiff specifically objects to the Cotner Declaration as lacking foundation, and comprised almost completely of inadmissible hearsay and hearsay upon hearsay (Dkt #149-2, ¶¶5-22). The declaration also contains conjecture and speculation as to what tasks were attributable to what claims, and provides neither factual foundation, nor sufficient declaration of first-hand knowledge to allow Plaintiff to respond in a meaningful fashion.  As such, any award of fees would violate Plaintiff's due process rights.

evidence that the rates set forth in the Declaration are rates reflect the prevailing market rates of other attorneys, other than unspecified "familiarity". (See, Dkt #149-2).  Therefore, Defendant has not met its burden.

### 2.    Hours

In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; see also *Jordan*, 815 F.2d at 1263. "Controlling precedent establishes 'that a party entitled to attorney's fees as a prevailing party on a particular [copy-right] claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim..." *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. Cal. 2003) (internal citations omitted). The district court should make an attempt to apportion fees between the race and retaliation claims and disability claims. *Identity Arts v. Best Buy Enter.*, 2008 U.S. Dist. LEXIS 119865 (N.D. Cal. Mar. 26, 2008).

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "The district court also should exclude from this initial fee calculation hours that were 'not reasonably expended'." *Id.,* 461 U.S. at 433-34 (citation omitted). "In other words, the court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Business Factors, Inc.,* 897 F. Supp. 458, 460 (D. Nev. 1995) (quotation omitted); see also *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir. 1992). In order for the Defendant to meet its burden, Defendant must submit admissible evidence that permits the Court to adequately determine whether the fees claimed are reasonable. *Hensley*, 461 U.S. at 371 fn. 12. The court may properly reduce

22

compensation on account of any failure to maintain appropriate time records. *Id.* at 438, fn. 13.

United's submission simply does not meet this burden[8].

### 3.   *Fees Upon Fees*

United also seeks $21,556 in "fees upon fees" for preparing, filing, and arguing its

Motion for Fees. It is Defendant's burden to establish that the fees it seeks were reasonably

necessary to the successful litigation of its claims. *Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378,

1385 (9th Cir.1984). While some statutes permit the recovery of "fees upon fees," Defendant has

failed to cite to any controlling authority regarding the availability of "fees upon fees" under the

the ADA or FEHA.  Because these fees were not reasonably necessary to the successful litigation

of the disability discrimination claims, Defendant cannot recover the $21,556 in attorneys' fees

related to this motion.

### 4.   *Relative Ability to Pay*

Awarding fees to one of the world's largest Airlines in excess of two years' salary of the

Plaintiff employee is fundamentally unfair.  In that Plaintiff would suffer extreme economic

hardship under an award of fees (Bonillas Decl. ¶ 4), the Court should otherwise exercise its

discretion to deny fees.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

Motion for Attorneys Fees.  Defendant has made no showing that would come close to the

extreme circumstances that would merit an award of fees.  Rather, this is an instance of a

Defendant seeking to "double-down" after prevailing on summary judgment.   Even if it had

made a showing of extreme circumstances, frivolousness,  or some fact even hinting at bad faith,

which it has not, Defendant has failed to prove up its claim for fees by providing admissible

---

8  Plaintiff's counsel requested to review billing records and attempted to identify the basis for
   Defendant's claim for fees, but was refused.  (Patten Decl., ¶ 9).

evidence of fees actually and reasonably incurred in the defense of the disability claims.   As such, Plaintiff respectfully requests that Defendant's Motion be denied *in toto*.

Respectfully submitted, this 16th day of September, 2014.    SMITH PATTEN

                                                    By: _/s/ Dow W. Patten_____
                                                    SPENCER F. SMITH
                                                    DOW W. PATTEN
                                                    Attorneys for Plaintiff
                                                    RAUL BONILLAS