SMITH PATTEN
SPENCER F. SMITH, ESQ. (SBN: 236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone: (415) 402-0084
Facsimile: (415) 520-0104

Attorneys for Plaintiff
RAUL BONILLAS

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RAUL BONILLAS, an individual, | Case No.: 4:12-cv-06574-SBA |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTORITIES IN SUPPORT OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE** |
| UNITED AIR LINES, INC. and DOES 1 through 10, inclusive, | |
| Defendants. | Date:        November 18, 2014<br>Time:        9:00 a.m.<br>Courtroom:  E: 15th Floor<br>Judge:       Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES.........................................................................................ii

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL BACKGROUND..............................................................................2

III.    ARGUMENT.......................................................................................................4

        A.     LEGAL STANDARD FOR SHIFTING FEES IN DISCRIMINATION CASES........................................................................................................4

               1.     *Standard For Shifting Fees For Prevailing Defendant In Discrimination Case*.....................................................................5

               2.     *Standard For Sanctions Pursuant to Section 1927 and The Court's Inherent Powers*..................................................................9

        B.     DEFENDANT'S REQUEST FOR FEES AND/OR SANCTIONS IS FRIVOLOUS BECAUSE PLAINTIFF HAS PRESENTED EVIDENCE THAT THE DEFENDANT DECISION-MAKERS HAD KNOWLEDGE OF HIS DISABILITY.............................................................................9

        C.     DEFENDANT'S MOTION FOR FEES AND/OR SANCTIONS MUST BE DENIED BECAUSE DEFENDANT HAS CITED NO AUTHORITY TO SUPPORT ITS POSITION THAT A DISABLED PLAINTIFF CAN BE SANCTIONED FOR NOT PRESENTING DIRECT EVIDENCE REGARDING DECISION-MAKERS' KNOWLEDGE OF PLAINTIFF'S DISABILITY.......................................................................17

        D.     DEFENDANT'S FAILURE TO MITIGATE SHOULD PRECLUDE AN AWARD FOR ATTORNEY'S FEES................................................20

        E.     RULE 11 MANDATES THAT DEFENDANT SHOULD BE SANCTIONED FOR FILING  A FRIVOLOUS MOTION FOR SANCTIONS...............................................................................................21

IV.    CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)................................................................................10

*Aragon v. Republic Silver State Disposal, Inc.*
    292 F.3d 654 (9th Cir. 2002)...................................................................12

*Banuelos v. Waste Connections, Inc.*
    2013 U.S. Dist. LEXIS 130753 (E.D. Cal. Sept. 11, 2013)....................16

*Bergene v. Salt River Project Agric. Improvement & Power Dist.*
    272 F.3d 1136 (9th Cir. 2001).................................................................14

*B.K.B. v. Maui Police Department*
    276 F.3d 1091 (9th Cir. 2002)...........................................................18, 19

*Bond v. Pulsar Video Prods.*
    50 Cal. App. 4th 918 (1996)................................................................5, 8

*Brown v. Federation of State Medical Boards*
    830 F.2d 1429 (7th Cir. 1987).................................................................20

*Brundage v. Hahn*
    57 Cal. App. 4th 228 (1997)....................................................................12

*Burekovitch v. Hertz*
    2001 U.S. Dist. LEXIS 12173 (E.D. N.Y. July 24, 2001).......................19

*Buster v. Greisen*
    104 F.3d 1186 (9th Cir. 1997).................................................................22

*Chambers v. NASCO, Inc.*
    501 U.S. 32 (1991)..................................................................................9

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*
    434 U.S. 412 (1978)..............................................................................5, 7

*Chuang v. Univ. of Cal. Davis*
    225 F.3d 1115 (9th Cir. 2000).................................................................12

*Cooter & Gell v. Hartmarx Corp.*
    496 U.S. 384 (1990)................................................................................22

*Corroon v. Reeve*
    258 F.3d 86 (2d Cir. 2001)......................................................................23

*Cotterill v. City & County of San Francisco*
    No. 08-2295, 2010 WL 1223146 (N.D. Cal. March 10, 2010).........................20

*Cummings v. Benco Bldg. Servs.*
    11 Cal.App.4th 1383 (1992)...........................................................16

*Doe v. Univ. of the Pac.*
    2010 U.S. Dist. LEXIS 130017 (E.D. Cal. Dec. 8, 2010)...................6, 7, 17, 20

*De La Fuente v. DCI Telecomms., Inc.*
    259 F. Supp. 2d 250 (S.D.N.Y. 2003).................................................22

*Dubisky v. Owens*
    849 F.2d 1034 (7th Cir. 1988).........................................................20

*Elsman v. Standard Fed. Bank*
    238 F. Supp. 2d 903 (E.D. Mich. 2003).............................................18

*EVRA Corp. v. Swiss Bank Corp.*
    673 F.2d 951 (7th Cir. 1982).........................................................20

*Fox v. Vice*
    131 S. Ct. 2205 (2011)...............................................................4, 5

*Frantz v. United States Powerlifting Federation*
    836 F.2d 1063 (7th Cir. 1987)....................................................22, 23

*Galdamez v. Potter*
    415 F.3d 1015 (9th Cir. 2005).........................................................14

*Harris v. Maricopa County Superior Court*
    631 F.3d 963 (9th Cir. 2011).........................................................5, 6

*Hays v. Sony Corp.*
    847 F.2d 412 (7th Cir. 1988).........................................................20

*Heard v. Lockheed Missiles & Space Co., Inc.*
    44 Cal. App. 4th 1735, 1748, 52 Cal. Rptr. 2d 620 (1996)...............................11

*Hollander v. Am. Cyanamid Co.*
    895 F.2d 80 (2nd Cir. 1990).........................................................12

*Hughes v. Rowe*
    449 U.S. 5 (1980)...................................................................6, 17

*In re: Keegan Mgmt Co., Securities Litigation*
    78 F.3d 431 (9th Cir. 1996)....................................................18, 22-23

*In re Marsch*
 36 F.3d 825 (9th Cir. 1994).................................................................24

*In re TCI, Ltd.*
 769 F.2d 441 (7th Cir. Ill. 1985)..........................................…..........22, 23

*Jensen v. Wells Fargo Bank*
 85 Cal. App. 4th 245 (Cal. App. 2d Dist. 2000)..................................12

*Lahiri v. Universal Music & Video Dist. Corp.*
 606 F.3d 1216 (9th Cir. 2010)..........................................................9, 18

*Lam v. University of Hawaii*
 40 F.3d 1551, 1563 (9th Cir. 1994)....................................................11

*Lieb v. Topstone Indus.*
 788 F.2d 151 (3d Cir. N.J. 1986).................................................23, 24

*Louie v. Carichoff*
 No. 05-0984, 2006 WL 3349521 (E.D. Cal. Nov. 16, 2006)................8

*Lowe v. City of Monrovia*
 775 F.2d 998, 1009 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986)...............12

*M.M. & E.M. v. Lafayette Sch. Dist.*
 No. 09-4624, 2012 WL 3257662 (N.D. Cal. Aug. 8, 2012).......................7

*Montrose Chem. Corp. of Calif. v. American Motorists Ins. Co.*
 117 F.3d 1128 (9th Cir. 1997)...........................................................22

*Moss v. AP*
 956 F. Supp. 891 (C.D. Cal. 1996).......................................................8

*No Barriers, Inc. v. Brinker Chili's Texas, Inc.*
 262 F.3d 496 (5th Cir. 2001)..............................................................7

*Pavelic & LeFlore v. Marvel Entm't Group*
 493 U.S. 120 (1989)..........................................................................24

*Peters v. Winco Foods, Inc.*
 320 F. Supp. 2d 1035 (E.D. Cal. 2004).................................5, 8, 18, 19

*Poland v. Chertoff*
 494 F.3d 1174 (9th Cir. 2007)...........................................................14

*Ramirez v. Merced County*
 No. 1:11-cv-531, 2013 WL 4780440 (E.D. Cal. Sept. 5, 2013).........................7-8

*Reeves v. Sanderson Plumbing Prods.*
    530 U.S. 133 (2000)............................................................................11

*Religious Technology Center v. Gerbode,*
    No. CV 93-2226 AWT, 1994 WL 228607 (C.D. Cal. May 2, 1994)..............................24

*Riverside v. Rivera*
    477 U.S. 561 (1986).............................................................................6

*Roadway Express Inc. v. Piper*
    447 U.S. 752 (1980)............................................................................19

*Rosen v. Thornburgh*
    928 F.2d 528 (2nd Cir. 1991)..................................................................12

*Saman v. Robbins*
    173 F.3d 1150 (9th Cir. Cal. 1999).............................................................7

*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*
    74 Cal. App. 4th 1211 (Cal. App. 2d Dist. 1999)................................................8

*Schnidrig v. Columbia Machine, Inc.*
    80 F.3d 1406 (9th Cir. 1996)..................................................................11

*Simmerman v. Corino*
    27 F.3d 58 (3d Cir. N.J. 1994)................................................................23

*Sischo-Nownejad v. Merced Community College Dist.*
    934 F.2d 1104 (9th Cir. 1991).................................................................11

*Sparks v. NLRB*
    835 F.2d 705 (7th Cir. 1987)..................................................................23

*Summers v. Teichart & Son, Inc.*
    127 F.3d 1150 (9th Cir. 1997)..................................................................5

*Szabo Food Service, Inc. v. Canteen Corp.*
    823 F.2d 1073 (7th Cir. 1987).............................................................23, 24

*Taybron v. City & County of San Francisco*
    341 F.3d 957 (9th Cir. 2003)..................................................................10

*Taylor v. Principal Financial Group, Inc.*
    93 F.3d 155 (5th Cir. 1996)...................................................................13

*Todd v. City of Natchitoches*
    238 F. Supp. 2d 793 (W.D. La. 2002).......................................................18-19

PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FRCP 11(c)(2)
(Case No.: 4:12-cv-06574-SBA)

*Townsend v. Holman Consulting Corp.*
929 F.2d 1358 (9th Cir. 1991)...........................................................22

*Truesdell v. S. Cal. Permanente Medical Group*
209 F.R.D. 169 (C.D. Cal. 2002)........................................................22

*Tutor-Saliba Corp. v. City of Hailey*
452 F.3d 1055 (9th Cir. 2006)..............................................................7

*U.S. Postal Service Bd of Governors v. Aikens*
460 U.S. 711 (1983).............................................................................12

*Vernon v. City of Los Angeles*
27 F.3d 1385 (9th Cir. 1994).................................................................6

*Wallis v. J.R. Simplot Co.*
26 F.3d 885 (9th Cir. 1994).................................................................12

*Warren v. City of Carlsbad*
58 F.3d 439 (9th Cir. 1995).................................................................11

*West Coast Theater Corp. v. City of Portland*
897 F.2d 1519 (9th Cir. 1990).........................................................17-18

*Williams v. Wilkinson*
122 F. Supp. 2d 894 (S.D. Ohio 2000)...............................................19

**Statutes**

28 U.S.C. § 1927.............................................................................9, 17

42 U.S.C. § 2000e-5(k).........................................................................5

Cal. Gov. Code § 12965(b)...................................................................5

**Federal Rules**

Fed. R. Civ. P. 11............................................................................21-22

Fed. R. Civ. P. 11(b)...........................................................................24

Fed. R. Civ. P. 11(c)...........................................................................24

Fed. R. Civ. P. 11(c)(1)(a)...................................................................24

Fed. R. Evid. 408.................................................................................16

**Other Sources**

*Kassan*, An Empirical Study of Rule 11 Sanctions, (Federal Judicial Center 1985)....................23

Rule 11 Advisory Committee Notes (1993)..................................................................24

PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FRCP 11(c)(2)
(Case No.: 4:12-cv-06574-SBA)

I.      **INTRODUCTION**

In the instant action Defendant seeks in excess of $200,000 in attorney's fees against a disabled employee who allegedly could not submit direct evidence at summary judgment regarding the discriminatory motives of the decision-makers involved in his adverse employment actions.   For the reasons set forth below, there is no foundation in law or fact for such an award of fees; Defendant and its counsel knew of the frivolousness of this Motion prior to filing the motion.

Specially, Defendant seeks approximately $200,000 in fees and costs against Plaintiff's counsel pursuant to 28 U.S.C. §1927 and the Court's inherent power for bad faith conduct, and against Plaintiff pursuant to 42 U.S.C. § 12205 and Cal. Government Code section 12965(b) as a prevailing party. Defendant's counsel alleges that "[f]rom Day One in this action, Plaintiff indisputably lacked any evidence to prove an essential element of his disability discrimination claims against Defendant – that Defendant's decision makers were aware of his alleged disability."

Many of the factual allegations identified in Defendant's Motion would require the Court to make elusive credibility determinations regarding the knowledge and motives of the decision-makers who demoted Plaintiff and who were never subjected to cross-examination in the instant action.  At the summary judgment stage the Court was precluded from making these types of findings and it would be unfair to make such a ruling after summary judgment without subjecting the alleged decision-makers to cross-examination.   More importantly, and contrary to Defendant's position, there is substantial evidence which was uncovered during discovery that the decision-makers had knowledge of Plaintiff's disability.

Furthermore, what is troubling about Defendant's motion is that Defendant fails to cite any authority to support its position that a disabled Plaintiff can be sanctioned for failing to

1

produce direct evidence regarding the decision-maker's knowledge of Plaintiff's disability and/or direct evidence regarding a decision-maker's motives for taking certain adverse employment actions.  Defendant attempts to buttress its quest for fees by disclosing Plaintiff's settlement negotiations in a blatant violation of Fed. R. Evid. 408.  As discussed herein, in this quest for sanctions,  Defendant's counsel has presented meritless arguments to this Court, has failed to substantiate its arguments by reference to any supporting authority, and has failed to bring to the Court's attention the existence of controlling authority that conflicts with those arguments.

Legal research and legal writing are fundamental skills necessary to the practice of law.  Thus, it should come as no surprise that an attorney's failure to perform adequate legal research and write well can violate the attorney's professional responsibility. A demonstrated lack of competent legal research and legal writing performance is injurious to an attorney's clients and the Court who both do not benefit in anyway from the filing of frivolous motions.  Failure to adequately research or write well, or both, is a violation of ethics rules and such conduct should be met with reprimand, suspension, disbarment from the practice of law and/or be the basis of a legal malpractice lawsuit.

## II.     FACTUAL BACKGROUND

In November, 2001,  Plaintiff suffered a severe stress reaction following severe threats in the workplace, and was later diagnosed with post-traumatic stress disorder ("PTSD") (Patten Decl., Exh. "B", United/Bonillas 000557).  Starting in November, 2001, Plaintiff took periodic disability/workers compensation leave for work related stress and was later diagnosed with PTSD, receiving a 15% permanent partial disability to his psyche (Bonillas Decl., Exh. "A"). In September, 2002, Plaintiff's supervisor, Norman Walcott, signed off on Plaintiff's PTSD Workers' Compensation form  (Patten Decl., Exh. "B", United/Bonillas 000586).

2

In June, 2003, United received notice that Plaintiff had received permanent disability benefits for the PTSD.  (Patten Decl., Exh. "B", United/Bonillas 000516-000517).

Beginning in 2010 Plaintiff investigated harassment and retaliation in the workplace by other employees and  made several reports to Labor Relations and Human Resources departments concerning an employee's harassing and discriminatory conduct, conduct that involved calling local law enforcement.  (Patten Decl., Exh. "A", Bonillas Depo., 243:8-246:10). This resulted in Plaintiff being shaken up, reliving the 2001 violence that resulted in his PTSD. In 2010 and 2011, Plaintiff reported workplace violence issues in the workplace concerning Karl Scheele, and testified that he informed his supervisor of his PTSD. (Patten Decl., Exh. "A", Bonillas Depo., 127:5-132:19).  Bonillas told them the fact that he was taking longer to complete tasks might be because of his PTSD and being rattled by the Scheele's workplace violence.  *Id.*

A few months before his demotion, Plaintiff was told that if he did not stop the reports, that he would be terminated. (Patten Decl., Exh. "A", Bonillas Depo., 158:2-5)

In October of 2010, Plaintiff was verbally counseled by his  manager, in part, for being forgetful. Plaintiff informed that the forgetfulness might be a symptom of the permanent long-term disability from the 2001 PTSD. (Patten Decl., Exh. "A", Bonillas Depo., 127:5-132:19).

The manager immediately ended the meeting. This same manager gave Plaintiff his first negative performance evaluation in early 2011. United then required Plaintiff to reapply for his position as part of United's Talent Selection  Process.  Plaintiff alleged in his complaint that United used the Talent Selection Process as a way to demote individuals in a discriminatory or retaliatory fashion and that Defendant's motives for demoting him were unlawful. Specifically, Plaintiff alleged that Defendant's motives for demoting him were: (1) at the time of the merger, he was engaged in a protected activity - opposing harassment and discrimination in the workplace; and (2) the new management team did not want supervisors of Plaintiff's race,

national origin, and disability status.  Notably, through the  discovery process, Plaintiff uncovered evidence that Hispanic employees were treated poorly and that the only two supervisors in the whole division who lost their jobs were both Hispanic.

On December 31, 2012, Plaintiff filed the instant action alleging that he was displaced from his position in part because of his disability.   The conduct of discovery in this matter was difficult, based upon Defendant's counsel's violations of Local Rule 30-1 in the scheduling of depositions, and the extreme difficulty Plaintiff had in obtaining evidence related to Defendant's proffered legitimate business reason:  the talent selection process.  (See, e.g. Dkt # 69.)

Plaintiff's former supervisors had been spread across the country in a revolving-door of supervisors around the talent selection process, Wagner having moved to Virginia and Holder to the state of Texas.  Defendant's counsel's refusals of accommodations for the process of discovery resulted in massive increases in the costs of litigation.

On February 11, 2014, Defendant filed its Motion for Summary Judgment on all of Plaintiff's claims. The Court continued the hearing on Defendant's Motion for Summary Judgment on two occasions. On August 18, 2014 the Court Granted Defendant's Motion for Summary Judgment. On September 2, 2014, Defendant filed its Motion for Attorneys' Fees, set for hearing on October 14, 2014. (Dkt #149). Defendant's Motion seeks sanctions and an award of fees and costs just shy of $200,000 for Plaintiff's disability discrimination claim alone. Defendant's motion is nothing short of fraud on the court and has no basis in law or fact.

## III.   ARGUMENT

### A.   LEGAL STANDARD FOR SHIFTING FEES IN DISCRIMINATION CASES

The American Rule is that each party bears his own litigation expenses, including attorney's fees, regardless of whether he wins or loses. *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). Congress, however, has created certain fee-shifting statutes.

4

### 1.   Standard For Shifting Fees For Prevailing Defendant In Discrimination Case

The Ninth Circuit has applied the Title VII standard for awarding fees to ADA and FEHA claims. *See Summers v. Teichart & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997); *Peters v. Winco Foods, Inc.,* 320 F. Supp. 2d 1035, 1037 (E.D. Cal. 2004); *Bond v. Pulsar Video Prods.,* 50 Cal. App. 4th 918, 921, 923-25 (1996). Title VII, Section 1988, and FEHA permit, but do not mandate, fee shifting. Title VII, 42 U.S.C. 2000e-5(k), states that: "[i]n any action or proceeding under this subchapter, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs" (emphasis added). Section 12965(b) of the California Government Code states that: "[i]n civil actions brought under this section [Fair Employment and Housing Act], the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees" (emphasis added) In civil rights actions, the Supreme Court has stated that:

> When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating a policy that Congress considered of the   highest priority. He therefore should ordinarily recover an attorney's fee from the defendant — the party whose misconduct created the need for legal action. Fee shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights,   and holds to account a violator of federal law.

*Fox*, 131 S. Ct. at 2213 (internal citations and quotation marks omitted).  The case law is abundantly clear, however, that Attorney's fees to prevailing defendants, are awarded "only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978).  This is because, even when unsuccessful, civil rights suits:

> provide an important outlet for resolving grievances in an orderly manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes . . . . Our system of awarding attorneys fees in civil rights cases is in large part dedicated 'to encouraging individuals injured by . . . discrimination to seek judicial relief.' *Harris v. Maricopa County Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011).

1

2          Accordingly, the great weight of authority and strong public policy considerations

3  militate against an award of fees to a prevailing defendant. This is because "[f]ees are regularly

4  awarded to prevailing plaintiffs who obtain some significant measure of relief but not to

5  prevailing defendants." *Hughes v. Rowe*, 449 U.S. 5, 15-16, 101 S. Ct. 173, 66 L. Ed. 2d 163

6  (1980) (per curiam).

7          The case law is extremely well-established that awards of attorneys fees to prevailing

8  defendants under Title VII are extremely rare. "The Supreme Court teaches that even when

9  unsuccessful, civil rights suits "provide an important outlet for resolving grievances in an orderly

10 manner and achieving non-violent resolutions of highly controversial, and often inflammatory,

11 disputes . . . . Our system of awarding attorneys fees in civil rights cases is in large part dedicated

12 'to encouraging individuals injured by . . . discrimination to seek judicial relief.' *Harris v.*

13 *Maricopa County Superior Court,* 631 F.3d 963, 971 (9th Cir. 2011). Civil rights plaintiffs often

14 secure important social benefits beyond  the individual remedy." *Riverside v. Rivera,* 477 U.S.

15 561, 573 (1986). "To... assess attorney's fees against plaintiffs simply because they do not finally

16 prevail would substantially add to the risks inherent in most litigation and would undercut the

17 efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Hughes*,

18 449 U.S. at 14-15. "Thus, attorneys' fees to a prevailing defendant in civil rights litigation should

19 be awarded only in extraordinary circumstances so as not to conflict with settled precedent and

20 Congressional policy." *Doe*, 2010 U.S. Dist. LEXIS 130017, at * 9-10.  Defendant's motion cites

21 none of the foregoing controlling authority.  Such a failure demonstrates a lack of candor in an

22 effort to seek an unlawful attorney's fee award.

23

24         Controlling Ninth Circuit authority holds that a defendant in a civil rights action is not

25 entitled to an award of attorneys' fees merely because it prevails on the merits of the case.

26 *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.), cert. denied, 513 U.S. 1000 (1994).

27

28

6

1    The claim must be "groundless or without foundation, rather than simply that the plaintiff has

2    ultimately lost his case." *Christiansburg Garment Co. v. Equal Employment Opportunity*

3    *Comm'n*, 434 U.S. 412, 421 (U.S. 1978). "[T]he law does not permit an award of fees...simply

4    because [defendant] succeeded on the motion for summary judgment." *Doe v. Univ. of the Pac.*,

5    2010 U.S. Dist. LEXIS 130017, 3-4 (E.D. Cal. Dec. 8, 2010). Again, Defendant fails to cite any

6    of the foregoing controlling authority, demonstrating a breach of the duty of candor in an effort

7    to seek an unlawful attorney's fee award.

8

9        Defendant cites to cases where a prevailing party was awarded fees because the plaintiff

10   had failed to sue the proper party.  These are not on point. *Saman v. Robbins,* 173 F.3d 1150 (9th

11   Cir. Cal. 1999) (Awarding fees to prevailing to officer in wrongful death action who was not

12   involved in the shooting but only participated in the investigation where the record was clear that

13   the officer was not a proper defendant and that the claims against him were groundless.); *No*

14   *Barriers, Inc. v. Brinker Chili's Texas, Inc*. 262 F.3d 496 (5th Cir. 2001) (awarding small portion

15   of fees where nonprofit repeatedly failed to sue the proper party which unreasonably continued

16   the litigation.).

17

18       Defendant also cites to cases which do not relate to employment discrimination. *Tutor-*

19   *Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. Idaho 2006) (finding claim was

20   frivolous where an individual alleged that his substantive due process rights were violated when

21   he was not allowed to land a large aircraft at the airport near his vacation home, when he was not

22   deprived of any access since he had other, alternative, aircraft which he could utilize.); *M.M. &*

23   *E.M. v. Lafayette Sch. Dist.*, No. 09-4624, 2012 WL 3257662 (N.D. Cal. Aug. 8, 2012) (Case

24   involving cross motions for summary judgment under Rehabilitation Act and IDEA.)

25       None of the remaining cases by Defendant provide authority to award fees under in this

26   matter. *Ramirez v. Merced County,* No. 1:11-cv-531, 2013 WL 4780440 (E.D. Cal. Sept. 5, 2013)

27

28

(Court granted unopposed motion for summary judgment and awarded sanctions under 1927 and inherent power where disability discrimination plaintiff filed frivolous lawsuit, admitting on multiple occasions that she could not perform the essential functions of her job and that she had retired and had not suffered an adverse employment action, and acting in bad faith by ultimately not opposing the employer's motion for summary judgment.); *Peters*, 320 F. Supp. 2d at 1037 (Declining to award fees under 42 USC Section 1924 even where an individual sued 30 companies for ADA violations using "form" complaints with "boilerplate" ADA violations, the majority of which he abandoned or were not covered under the ADA); *Moss v. AP,* 956 F. Supp. 891, 895 (C.D. Cal. 1996) (Finding that a claim became frivolous after the plaintiff admitted his entire cause of action was based on his "own personal belief" that he had been discriminated against, noting that the plaintiff failed to conduct "even minimal discovery" concerning business justification or ages of those who replaced him and that, if he had, he would have discovered that half of the six individuals who replaced him were over age 40 and that one was his age.); *Saret-Cook v. Gilbert, Kelly, Crowley & Jennett,* 74 Cal. App. 4th 1211 (Cal. App. 2d Dist. 1999) (Affirming award of attorneys fees in case described as "nightmarish aftermath of a failed office romance...similar to the movie Fatal Attraction" where district court's decision was amply supported by a voluminous record of egregious, vexatious, extortionate conduct by plaintiff who recognized her conduct may have been fueled by poor mental health.); *Bond*, 50 Cal.App.4th 918 (awarding fees after jury verdict where defendant had brought demurrer, motion to dismiss, and attempted to settle with plaintiff for more than the jury awarded plaintiff); *Louie v. Carichoff*, No. 05-0984, 2006 WL 3349521 (E.D. Cal. Nov. 16, 2006) (awarding fees after ADA case was dismissed, noting that the suit was brought in bad faith so that the federal court would interfere with a related state court case, depriving the defendant of its procedural rights.)

### 2.   Standard For Sanctions Pursuant to Section 1927 and The Court's Inherent Powers

United also seeks fees under Section 1927 of Title 28 of the United States Code, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.*  Federal courts also have inherent powers to assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). "[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id.* at 46 (internal quotation marks omitted). While "[r]ecklessness suffices for [Section] 1927 sanctions . . . sanctions imposed under the district court's inherent authority require a bad faith finding." *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 4 (9th Cir. 2010).

### B.   DEFENDANT'S REQUEST FOR FEES AND/OR SANCTIONS IS FRIVOLOUS BECAUSE PLAINTIFF HAS PRESENTED EVIDENCE THAT THE DEFENDANT DECISION-MAKERS HAD KNOWLEDGE OF HIS DISABILITY.

The issues in the instant action relate to (a) who made the decisions that led to Plaintiff losing his supervisor position; and (b) what the motives of those decision-makers were.  Plaintiff alleged that over a six-month period, several individuals were involved in the process of removing Plaintiff from his supervisor position: (1) Ken Holder, author of Plaintiff's December, 2011 "underperforms" performance review which disqualified Plaintiff from interviewing for talent selection; (2) Shannon Wagner, who upheld the poor performance review in April 2012 and put the position up for Talent Selection; and (3) Sinasi Stewart, who interviewed Plaintiff for Talent Selection with knowledge that Plaintiff had issues with a medical clearance.

9

Plaintiff chose to focus its discovery efforts and the thrust of its opposition to summary judgment on the direct evidence of retaliation[1] and the statistical evidence of race[2].  The Court did not see that evidence the same way Plaintiff did, and did not allow Plaintiff to present the late-produced documentary evidence that Caucasian supervisors with poor performance reviews retained their positions while only the Hispanic supervisors lost their positions.  (See Dkt# 133, p. 3-5) The fact that Plaintiff chose to focus discovery and briefing on his strongest claims has no bearing on whether the disability claims were frivolous.

Defendant alleged that its motives for demoting Plaintiff were poor performance and a poor interview during the talent selection process.    Plaintiff contends in his appeal to the Ninth Circuit that the Court at summary judgment resolved these issues by making impressible credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")[3]   Plaintiff will contend on appeal that  the court did not view all reasonable inferences from the underlying facts in the light most favorable to the party opposing the motion.    Resolving the issues surrounding Defendant's motives for removing Plaintiff from his supervisor position, especially when that decision

---

1  Shannon Wagner threatening Plaintiff with his job if he did not stop the HR complaints about Karl Scheele (Dkt # #75, p. 17)

2  After the Court granted Plaintiff' motion to compel production of documents, Plaintiff attempted to put those documents, which showed that Caucasian supervisors who had poor performance kept their positions while only Hispanic supervisors were demoted, but the Court did not allow the evidence.  (Dkt # 133, Dkt # 140)  Plaintiff has appealed that ruling to the Ninth Circuit Court of Appeals. (Dkt # 147)

3  "Findings of fact should be eschewed in determining whether summary judgment should be granted." *Taybron v. City & County of San* Francisco, 341 F.3d 957, 959 n.2 (9th Cir. 2003) (holding, in the context of an employer's summary judgment motion on plaintiff's Title VII claims, that the district court erred in "weighing . . . the evidence and making findings rather than focusing on whether genuine issues of material fact are in dispute").

involved a revolving-door of decision-makers required the Court to make impermissible credibility determinations.

In the employment context, the U.S. Supreme Court, in *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000), articulated the implications of this rule as it pertains to evaluating the testimony of interested witnesses: "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id*. at 151.  *See Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (courts require little evidence to deny summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the factfinder, upon a full record) (citations omitted); *see also Lam v. University of Hawaii,* 40 F.3d 1551, 1563 (9th Cir. 1994) (quoting *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 111 (9th Cir. 1991).)

Summary judgment is ordinarily not appropriate in an employment discrimination case on "any grounds relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination." *Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir. 1995); *cert. denied,* 516 U.S. 1171, 116 S. Ct. 1261, 134 L. Ed. 2d 209 (1996).[4] Courts have recognized that in discrimination cases, an employer's true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at

---

[4]    "Proving intentional discrimination can be difficult because there will seldom be eyewitness testimony as to the employer's mental processes. It is rare for a plaintiff to produce direct evidence or smoking gun evidence of discrimination." *Heard v. Lockheed Missiles & Space Co., Inc.,* 44 Cal. App. 4th 1735, 1748, 52 Cal. Rptr. 2d 620 (1996).(internal quotation marks, brackets and citations omitted). "Thus, plaintiffs may demonstrate via indirect or circumstantial evidence that they were the victims of discrimination." *Id.* at 1749.

the summary judgment stage. *See U.S. Postal Service Bd of Governors v. Aikens,* 460 U.S. 711, 716, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "there will seldom be 'eyewitness' testimony as to the employer's mental processes").[5] Viewing the evidence in the light most favorable to Plaintiff and disregarding all evidence favorable to the moving party, the Court must find that there are genuine issues of material fact in the instant action.[6]

Defendant's motion misstates the law by arguing that a disability discrimination claim is frivolous unless Plaintiff provides direct evidence that the "decision-makers" were aware of his disability. In *Brundage v. Hahn,* 57 Cal. App. 4th 228 (1997), the court stated that a disabled claimant bringing suit under the FEHA "can establish a prima facie case by proving that: (1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability. [Citation.]" *Id.* at 236, fn. omitted. The claimant need not prove a causal connection between the disability and the adverse employment action by direct evidence. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254-255 (Cal. App. 2d Dist. 2000). A plaintiff can establish the latter element for purposes of a

---

5   Because an employer is very unlikely to leave a "paper trail or 'smoking gun' attesting to discriminatory intent," a disparate treatment plaintiff must often "cumulatively undercut" defendants' proffered explanation by presenting an accumulation of circumstantial evidence. *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2nd Cir. 1990); accord *Rosen v. Thornburgh*, 928 F.2d 528 (2nd Cir. 1991); *see also U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S. Ct. 1478, 75 L.Ed. 2d 403 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes.").

6   Furthermore, "[t]he requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 659 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)); *see also Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1124 (9th Cir. 2000) (plaintiff in employment discrimination action need produce very little evidence in order to overcome employer's motion for summary judgment); *Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir. 1985), *amended,* 784 F.2d 1407 (9th Cir. 1986) (stating that very little additional evidence is required to raise a genuine issue of fact regarding motive, and concluding that summary judgment is ordinarily inappropriate once a prima facie case has been established).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

wrongful discharge or adverse employment action claim by showing that " 'he or she was subject to an adverse employment action' " and that " 'he or she was replaced by a non-disabled person or was treated less favorably than  non-disabled employees.' [Citation.]" *Id*. at 236, fn. 1,  quoting *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 162. (5th Cir. 1996).

Plaintiff testified that he told a manager at United about his PTSD diagnosis. (Dkt #149 at page 5.) Plaintiff also testified in his deposition that he told Kenneth Holder and Kevin Sklanka about his PTSD, and that Kevin Sklanka informed Bonnie Turner about his disability. (*See* Exhibit "A" to Patten Decl., Bonillas Depo.,  129:25-130:19, 131:1-22; 132:6-133:16.) Furthermore, Defendant produced an email from May 31, 2011, prior to Plaintiff's interview for the Supervisor position, which demonstrates that Sinasi Stewart, one of the alleged "decision-makers" was aware of an issue with Plaintiff's medical clearance. (Patten Decl., Exhibit "B" United/Bonillas-002631.)   Defendant's fees motion attempts to transform an issue of credibility into sanctionable conduct.  This is wholly unwarranted and not supported by the record.

Furthermore, Plaintiff also alleged that he suffered an adverse employment action when he received his first negative performance review. (Holder Decl. ¶ 4; Fulton  Decl. ¶ 3, Dkt # 57.) This negative performance review initially disqualified Plaintiff from even interviewing to keep his supervisor position.  As such, the poor performance review, by disqualifying him from keeping his position through the Talent Selection Process, was itself an actionable adverse action. Defendant does not dispute that Plaintiff testified that he told Kenneth Holder about his PTSD diagnosis.  (Dkt #149 at page 5.) At summary judgment, Defendant did not dispute that Mr. Holder gave Plaintiff his very first negative performance review. (Holder Decl. ¶ 5.) Therefore, it is evident that the employer knew about Plaintiff's PTSD at the time of the adverse employment action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

More importantly, the decision-makers' lack of knowledge regarding Plaintiff's protected class or activity does not insulate a Defendant from liability. If a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decision-maker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process. *Poland v. Chertoff*, 494 F.3d 1174, 1182-1183 (9th Cir.2007) This standard is consistent with what the Ninth Circuit suggested in previous Title VII retaliation cases. *see Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) ("[e]ven if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the [adverse employment] decision."); *Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus.")

A Plaintiff's failure to meet its burden of proof is not in itself  a basis for an award of attorney's fees, and Defendant's motion proffers no authority holding as much.  All of the foregoing facts, whether or not presented convincingly at summary judgment, have been known by United since before this lawsuit began.  United cannot now seek sanctions and fees by omitting the fact that at least one "decision-maker" was aware of issues with Plaintiff's medical clearance (a fact which United produced during this litigation) and the fact that Kenneth Holder, Kevin Sklanka and Bonnie Turner, all of whom participated in and approved the Talent Selection were made aware of Plaintiff's PTSD.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant has failed to give any factual basis for the Court to sanction Plaintiff's counsel. Defendant states that Plaintiff engaged in "discovery tactics that resulted in attorneys' fees many times over what they should have been" and that Plaintiff's counsel's "tactics were tantamount to a 'scorched earth' approach in hopes of forcing a settlement of a wholly meritless action." (Dkt #149 at page 10.) These statements are purely conclusory,  and the fact that Plaintiff served discovery requests, took depositions, and prevailed on a motion to compel document production cannot form the basis of a Motion for Attorneys' Fees.

Defendant argues that Plaintiff's claims were frivolous because Plaintiff testified that he told Holder about his PTSD. However, Plaintiff also testified in his deposition that he told Kenneth Holder and Kevin Sklanka about his PTSD, and that Kevin Sklanka informed Bonnie Turner, a "decision maker" about his disability. (See, Patten Decl. Exhibit "A" , Bonillas Depo 129:25-130:19, 131:1-22; 132:6-133:16.) Defendant also produced an email from May 31, 2011 which demonstrates that Sinasi Stewart, another "decision-makers," was aware of an issue with Plaintiff's medical clearance. (Patten Decl., Exhibit "B" United/Bonillas-002631.)   Today, Plaintiff is still operating under work restrictions that limit his lifting capacity, and United has accommodated that disability.  (Bonillas Decl., ¶ 3) Therefore, Defendant's claim for sanctions under Section 1927 and the Court's inherent power lacks any factual basis and must be denied.

Defendant's Motion for Attorneys' Fees is unwarranted and fails to allege facts to demonstrate that Plaintiff's disability claims were frivolous, let alone that Plaintiff's counsel acted recklessly in bringing them. If Defendant's counsel truly did believe Plaintiff's claims to be frivolous, it had multiple avenues to bring its position to the court. Defendant failed to make a Rule 11 motion at any point during this litigation and never filed a motion to dismiss. Instead, Defendant litigated this case as a case that had merit, as it states "devot[ing] hundreds of hours to investigating and litigating a number of factual issues" (Dkt # 149, p. 1)

Defendant's Motion is unsupported by the factual record in this matter. As described above, Plaintiff's claims were not frivolous, since there was circumstantial evidence that United was aware of Plaintiff's disability.  Courts have rarely found that a claim was frivolous when brought.  *Banuelos v. Waste Connections, Inc.,* 2013 U.S. Dist. LEXIS 130753, 11-15 (E.D. Cal. Sept. 11, 2013 (Holding claim brought in good faith even though "not all of the elements of a prima facie case of each of the pled causes of action [were] identified in the Complaint, the DFEH Charge, or the EEOC Charge...the collective allegations...do not indicate wholly baseless or unreasonable claims."); *Cummings v. Benco Bldg. Servs.*, 11 Cal.App.4th 1383 (1992) (Holding trial court abused its discretion when it awarded the defendant employer attorneys fees because the "cause of action was not obviously contrary to the undisputed facts or well established legal principles that specifically preclude recovery for the type of injury alleged."

Defendant's argument that Plaintiff's counsel finally acknowledged the baselessness of Plaintiff's disability claims in a settlement offer (Dkt #149, page 7) is both false and violates Fed. R. Evid. 408, which provides in relevant part:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim;

*Id.*  Plaintiff specifically objects to the paragraphs 15 and 16 of the Thompson Declaration (Dkt#149-1) and Exhibit 4 thereto as inadmissible under Fed. R. Evid. 408 and requests that the Court strike the reference to settlement communications.  As part of the parties' settlement negotiations, Plaintiff made a strategic decision to tell a more precise narrative at trial (Patten Decl., ¶4-5)  The settlement negotiation does not demonstrate that the claims were baseless and Defendant's counsel should be admonished for filing patently inadmissible evidence.

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant does nothing more than rely on the fact that the case was dismissed at summary judgment and conclusory allegations to support its Motion for Attorneys' Fees. However, the fact that a "complaint...cannot survive a motion to dismiss does not, without more, entitle the defendant to attorney's fees." *Hughes,* 449 U.S. 5 (U.S. 1980).   To the contrary, the case law is clear that fees can only be provided in extraordinary circumstances of which Defendant has failed offer any evidence or even articulate any facts. *Doe*, 2010 U.S. Dist. LEXIS 130017, at *9-10. Defendant has failed to demonstrate any extraordinary circumstances.

Defendant has long been on notice of Plaintiff's PTSD, and his permanent lifetime partial disability, as that disability occurred during the course and scope of Plaintiff's employment. (Bonillas Decl.., Exh. "A").   For Defendant to now move for attorneys fees in the face of its own records and Plaintiff's own testimony is unwarranted and sanctionable.

   **C.      DEFENDANT'S MOTION FOR FEES AND/OR SANCTIONS MUST BE DENIED BECAUSE DEFENDANT HAS CITED NO AUTHORITY TO SUPPORT ITS POSITION THAT A DISABLED PLAINTIFF CAN BE SANCTIONED FOR NOT PRESENTING DIRECT EVIDENCE REGARDING DECISION-MAKERS' KNOWLEDGE OF PLAINTIFF'S DISABILITY.**

Defendant's Motion for Attorneys Fees and Sanctions is completely devoid of citation to any binding precedent that a civil rights Plaintiff can be sanctioned for not proving one element of one claim at summary judgment, particularly on one which is contingent upon credibility determinations.

28 U.S.C. § 1927 authorizes attorney's fees reasonably incurred as sanctions against an attorney who multiplies the proceeding in any case unreasonably or vexatiously. 28 U.S.C. 1927. The overwhelming authority which Defendant should have reviewed prior to filing its motion holds that sanctions under Section 1927 are justified only in the most egregious of cases. *Doe*, 2010 U.S. Dist. LEXIS 130017, at *3-4. In order to impose sanctions under section 1927, the court must make a finding that the attorney acted in bad faith. *West Coast Theater Corp. v. City*

17

*of Portland,* 897 F.2d 1519, 1528 (9th Cir. 1990). Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *Peters,* 320 F. Supp. 2d at 1041.   Defendant's motion does not even attempt to make a showing of bad faith because it knows it cannot makes such a showing.

Defendant bases its claim for fees under §1927 in part on Plaintiff's initial pleading, contrary to controlling Ninth Circuit authority:  "Because sanctions under § 1927 are authorized only for the unreasonable multiplication of proceedings, 'applies only to unnecessary filings and tactics once a lawsuit has begun. . . [and] cannot be applied to an initial pleading.'" *In re Keegan Mgmt. Co. Sec. Lit.*, 78 F.3d 431, 435 (9th Cir. 1996).

Defendant fails to cite to any legal authority for sanctioning Plaintiff's counsel.  *Elsman v. Standard Fed. Bank*, 238 F. Supp. 2d 903, 909 (E.D. Mich. 2003) (plaintiff's pleading "is sanctionable because it contains summary assertions without  including or explaining citations to any legal authority to support his contentions")) The only cases cited by Defendant fail to support Defendant's position.  Defendant cites to *Lahiri v. Universal Music & Video Dist. Corp.*, 606 F.3d 1216 (9th Cir. 2010) where a court awarded sanctions to a prevailing defendant in a copyright infringement case where the court found that the plaintiff had litigated the action in bad faith for five years, noting that the attorney used a "manipulative tactic" by retaining the judge's former law firm in an attempt to cause the judge's recusal. Defendant also cites to *B.K.B. v. Maui Police Department*, 276 F.3d 1091 (9th Cir. 2002), where an employer's counsel was sanctioned after recklessly presenting testimony in violation of Federal Rules of Evidence Section 412 concerning an employee's sexual history after earlier warned by the trial court to avoid bringing such testimony.   These cases demonstrate that a court may sanction an attorney for manipulative tactics and violating the court's instruction, none of which occurred here. *Todd v. City of Natchitoches*, 238 F. Supp. 2d 793, 801 (W.D. La. 2002) (sanctions imposed where

18

1   plaintiff "offers no case law to support [his claim], and the case law that is cited is frequently

2   irrelevant or misconstrued").

3       In fact, there is direct contrary authority awarding sanctions under Section 1927 in this

4   situation.  Even where a plaintiff filed over thirty "form" complaints against various businesses

5   under the ADA, alleging substantially similar boilerplate violations, many of which were

6   abandoned by the plaintiff, the Court has refused to sanction counsel. *Peters*, 320 F. Supp. 2d

7   1035 (Court denied sanctions even where plaintiff filed over thirty "form" complaints against

8   different businesses in the same court alleging substantially the same boilerplate violations, most

9   of which the plaintiff abandoned.) Therefore this claim lacks any legal basis and should be

10  sanctioned under Rule 11. *Williams v. Wilkinson*, 122 F. Supp. 2d 894, 903 (S.D. Ohio 2000)

11  (sanctioning attorney for filing motion to dismiss that failed to cite or distinguish adverse

12  controlling circuit precedent).

13      Inherent power sanctions are available only if the court specifically finds bad faith or

14  conduct tantamount to bad faith. *Roadway Express Inc. v. Piper* 447 US 752, 767 (1980); *B.K.B.*,

15  276 F.3d at 1108.  As it did with its Section 1927 argument, Defendant's Motion is completely

16  devoid of any authority for the proposition that a Plaintiff's failure to meet its burden of proof on

17  one element of one claim at summary judgment is tantamount to bad faith.  *See, Burekovitch v.*

18  *Hertz*, 2001 U.S. Dist. LEXIS 12173, at *36 (E.D. N.Y. July 24, 2001) (sanctions imposed where

19  party failed to identify or discuss any authority that suggested his claim was permissible under

20  the stated law.)  Defendant's Motion for Attorneys' fees is as devoid of evidence as it is devoid of

21  legal precedent, citing to no specific conduct by Plaintiff the would even come close to a finding

22  of bad faith.

23      Defendant cites to *Cotterill v. City & County of San Francisco*, No. 08-2295, 2010 WL

24  1223146 (N.D. Cal. March 10, 2010) and states that fees can be awarded where "plaintiff's

19

counsel's tactics proliferated proceedings...after it was clear claim lacked legal and factual support." In that case, the plaintiff filed a suit alleging that her civil rights had been violated relating to her detention and treatment at a mental health hospital. The court awarded fees pursuant to 28 U.S.C. Section 1927 noting that plaintiff's counsel was "vexatious" that he "failed to comply with this Court's standing orders and rulings...consistently filed rambling, dilatory and legally deficient submissions...was unprofessional...in his conduct before this Court, and most importantly, in relation to his representation of his client." *Id*. at *3-4.The court also noted that the testimony of two witnesses proved that plaintiff's testimony was untrue and that counsel acted recklessly in relying solely on plaintiff's testimony concerning the facts. *Id*. at *4 Defendant has not alleged any facts that rise even close to the level of unprofessional and sanctionable conduct in *Cotterill*.

### D.      DEFENDANT'S FAILURE TO MITIGATE SHOULD PRECLUDE AN AWARD FOR ATTORNEY'S FEES

Based upon the foregoing it is clear that this motion was a waste of United's money and the Court's time.  A sanction for a frivolous filing is in the nature of a tort remedy for negligent (in aggravated cases, intentional) misconduct, *Hays v. Sony Corp*., 847 F.2d 412, 418 (7th Cir. 1988); and when a tort victim fails to take reasonable steps to mitigate his damages, those damages are either cut down or eliminated altogether under the principle of "avoidable consequences," on which s*ee EVRA Corp. v. Swiss Bank Corp.*, 673 F.2d 951, 958 (7th Cir. 1982). The duty to mitigate is already recognized in cases under Fed.R.Civ.P. 11, *see Dubisky v. Owens*, 849 F.2d 1034 (7th Cir. 1988); *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1439 (7th Cir. 1987).   A court must deny an otherwise meritorious motion for sanctions because the movant failed to take reasonable steps to mitigate the burdens imposed on it by the alleged frivolous pleading for which sanctions are sought.

1
2
3
4

If United had evidence of that Plaintiff's claims were frivolous, it had several tools at its disposal under the Federal Rules, which it did not use.  The court in *Doe*, 2010 U.S. Dist. LEXIS 130017 at * 9-22 denied a motion for attorney's fees because  "significantly, defendant did not file a motion to dismiss. Fed. R. Civ. P. 12(b)(6)."  The Court went on to state,

5
6
7
8
9
10

> if defendant believed plaintiff's claims were truly frivolous, defendant would likely have sought dismissal, or at a minimum, narrowed the issues via such a motion. Defendant did not do so. Indeed, at no point in the course of the litigation did defendant make a Rule 11 motion or any informal request that plaintiff dismiss the lawsuit. Instead, defendant engaged in over six months of extensive discovery, and only after discovery closed, did it file a motion for summary judgment (just one month before the dispositive motion deadline). From these facts, it appears defendant vigorously litigated this case as if plaintiff's claims had merit.

11
12
13
14
15
16
17

*Id.*  Here, Defendant United neither made a Rule 11 safe harbor motion nor filed a motion to dismiss.   Instead, United litigated this action as a case that had merit, deposing the Plaintiff twice, conducting extensive discovery including multiple sets of Interrogatories and Requests for Production of Documents, and meeting and conferring extensively over discovery disputes. (Patten Decl., ¶¶ 6-8).  Defendant vigorously litigated this case and never put Plaintiff on notice that it thought the case was "frivolous".

18
19

### E.   RULE 11 MANDATES THAT DEFENDANT SHOULD BE SANCTIONED FOR FILING  A FRIVOLOUS MOTION FOR SANCTIONS

20
21

United has brought an unwarranted Motion for Attorneys Fees for an improper purpose and sanctions are warranted pursuant to Federal Rules of Civil Procedure Rule 11.

22
23

Rule 11 provides, in relevant part:

24
25

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

26
27

  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

28

1

2

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a non frivolous argument for extending, modifying, or reversing existing law or for establishing new law;

3

4

5

6

7

8

9

10

As described by the Supreme Court, the  "central purpose of Rule 11 is to deter baseless filings in District Court and thus …streamline the administration and procedure of the federal courts … Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy … any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), superseded on other grounds by statute as stated in *De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003).

11

12

13

14

15

Under Rule 11, a lawyer has a duty to "limit litigation to contentions 'well grounded in fact and...warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. Ill. 1985), citing Fed. R. Civ. P. 11.

16

17

18

19

20

21

22

23

24

25

26

27

28

Rule 11 sanctions may appropriately be imposed on the signer of a paper "if either (a) the paper is filed for an improper purpose, or (b) the paper is 'frivolous.'" *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991) (en banc). A paper is "frivolous" if it is "both baseless and made without a reasonable and competent inquiry." *Id.*; *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997). An assertion is baseless where it completely lacks a factual foundation. *See Montrose Chem. Corp. of Calif. v. American Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997). Rule 11 is governed by an objective standard of "reasonableness under the circumstances." *Truesdell v. S. Cal. Permanente Medical Group*, 209 F.R.D. 169 at 173-174 (C.D. Cal. 2002); See *In re: Keegan Mgmt Co., Securities Litigation,* 78 F.3d 431, 434 (9th Cir. 1996) (confirming Townsend's objective-objective approach); *See also Corroon v. Reeve*, 258 F.3d 86, 92 (2d Cir. 2001) ("Rule 11 is violated when it is clear under existing precedents that a

pleading has no chance of success and there is no reasonable argument to extend, modify, or reverse the law as it stands.")

A party cannot "strike out blindly and rely on its opponent to do the research to make the case or expose its fallacies. *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1064-1065 (7th Cir. Ill. 1987) *citing, In re TCI Ltd.,* 769 F.2d at 445-47. Rule 11 requires that counsel "do legal research before filing, and to be aware of legal rules established by the Supreme Court. *Frantz*, 836 F.2d at 1064-1065, citing *Sparks v. NLRB*, 835 F.2d 705 (7th Cir. 1987); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080-82 (7th Cir. 1987); See, *In re TCI, Ltd.*, 769 F.2d at 446 ("An attorney must ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief.") In order to comply Rule 11, counsel must conduct a reasonable investigation of the facts and a normal competent level of legal research to support the presentation. *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. N.J. 1994)."The signature of counsel on a pleading certifies that a reasonable investigation of the facts and a normally competent level of legal research support the presentation." *Lieb v. Topstone Indus.,* 788 F.2d 151, 157 (3d Cir. N.J. 1986).

If a party violates Rule 11, the district court "shall" impose a sanction, under the express terms of the rule. *Frantz*, 836 F.2d at 1064-1065. The use of "shall" was deliberate and carefully considered, and was intended to overcome the reluctance of courts to assess sanctions against erring counsel and parties. *See, Kassan*, An Empirical Study of Rule 11 Sanctions, (Federal Judicial Center 1985). "Rule 11 was amended in 1983 to make it easier for a court to award fees." *In re TCI, Ltd.*, 769 F.2d at 446. "When an attorney recklessly creates needless costs the other side is entitled to relief." *Id.*

Rule 11 Fees may be awarded against prevailing parties. *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073. Sanctions must be imposed on any party, attorney, or law firm that has

23

violated Rule 11(b) or is responsible for the violation. Fed.R.Civ.P.11(c)(1)(A) ("Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."); see also Rule 11 Advisory Committee Notes (1993) ("Since … a [sanctions] motion may be filed only if the offending paper is not withdrawn or corrected within 21 days after service  of the motion, it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency."); *Religious Technology Center v. Gerbode, No*. CV 93-2226 AWT, 1994 WL 228607, at **4-5 (C.D. Cal. May 2, 1994) (discussing imposition of sanctions against parties, law firms, and co-counsel).[7]

"Counsel's certification also warrants that the pleading is not being used for an improper purpose, such as to cause harassment, undue delay, or needless increase in litigation expenses. *Lieb*, 788 F.2d at 157. A filing may be filed for an improper purpose, even if it isn't frivolous. *In re Marsch,* 36 F.3d  825 (9th Cir. 1994).

Here, the foregoing analysis demonstrates that Defendant's counsel made no effort to review the applicable standards and controlling case law.   Similarly, Defendant's counsel made no effort to create an evidentiary record of frivolousness, extreme conduct, or bad faith because it cannot do so.   This wholesale failure of proof and failure to cite to adverse controlling authority demonstrates that Defendant and its counsel Tracy Thompson have brought a motion subject to Rule 11 sanctions.

Furthermore, the likelihood of an improper purpose here is substantial.  Smith Patten is currently representing other former or current United employees in other actions against  United Airlines, Inc.   In those cases, United is represented by the same law firm; i.e., *Cooper v. United*

---

7  In *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120 (1989), the  Court adopted a literal reading of the 1983 version of the rule, holding that only the attorney actually signing a pleading, and not that attorney's law firm, may be sanctioned under Rule 11. However, the 1993 amendment overruled Pavelic by allowing courts to "sanction [ ] the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Rule 11(c).

*Airlines, Inc.* Case No.: 13-cv-2870 JSC, and *Barcenas v. United Airlines, Inc.*, Case No.: 14-cv-2504-JSW against the Miller Law Group, with Tracy Thompson as "lead counsel".  By obtaining a potentially crippling fee award against Smith Patten, Tracy Thompson could obtain an advantage in the *Cooper* and *Barcenas* matters pending before this Court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves the Court to sanction United Airlines, Inc., its attorney Tracy Thompson, and the law firm Miller Law Group for violations of Rule 11(b) of the Federal Rules of Civil Procedure.

Respectfully submitted, this 16th day of September, 2014.    SMITH PATTEN

By:  */s/ Dow W. Patten*
SPENCER F. SMITH
DOW W. PATTEN
Attorneys for Plaintiff
RAUL BONILLAS

25