IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL BONILLAS,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED AIR LINES INC.,<br><br>    Defendant.<br>_____ / | No. C -12-06574(EDL)<br><br>**ORDER REQUIRING FURTHER DECLARATION IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS** |

**I.    Introduction**

Plaintiff Raul Bonillas sued his employer, Defendant United Airlines, for race and disability discrimination and retaliation. On August 19, 2014, Judge Armstrong granted Defendant's Motion for Summary Judgment and entered Judgment in favor of Defendant. See Dkt. No. 145. Plaintiff has appealed Judge Armstrong's decision to the Ninth Circuit. See Dkt. No. 147. Thereafter, Defendant also filed a Bill of Costs seeking $63,302.19 in costs as the prevailing party. The Clerk of Court reduced the amounts sought and awarded $50,617.61 in costs. Plaintiff then filed a Motion for Review of the Clerk's Taxation of Costs and Judge Armstrong referred the motion to this Court for a Report and Recommendation. This Court held a hearing on the matter on November 18, 2014 during which it requested a supplemental declaration from Defendant on the issue of which electronic discovery costs contained in the invoices are properly taxable, and allowed Plaintiff time to respond. Though the parties' submissions are helpful, further information relating to Defendant's electronic discovery costs is needed before the Court issues a Report and Recommendation on Plaintiff's Motion. Defendant is ORDERED to submit a further declaration supporting its claimed e-discovery costs by addressing the issues raised below by no later than January 5, 2015, and Plaintiff shall have until January 8, 2015 to submit a brief response to the further declaration if he so

chooses.

## II. Discussion

For purposes of taxing costs to the prevailing party, the relevant question is which of Defendant's claimed e-discovery costs are recoverable under § 1920. Initially, Defendant took the position that all of the costs included on its e-discovery vendor invoices are taxable, without making any effort to parse the various tasks related to e-discovery or explain why they are compensable costs under applicable case law. During oral argument, the Court directed the parties to recent case law analyzing § 1920 as it applies to various categories of e-discovery tasks and required further documentation from the parties. Defendant submitted a supplemental Declaration of M. Michael Cole Regarding ESI Related Costs ("Cole ESI Declaration") which reduced Defendant's claimed ESI-related costs from $34,1245.01 to $19,786.30 in light of CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320 (Fed. Cir. 2013) and Alzheimer's Institute of America, Inc. v. Elan Corp., PLC, No. C-10-cv-00482-EDL, 2013 WL 8744216 (N.D.Cal. Jan. 30, 2013). See Dkt. # 176. Plaintiff filed a supplemental response arguing that the Cole ESI Declaration is still insufficient, and maintains that no ESI costs should be awarded. See Dkt. # 178.

Section 1920(4) allows for the recovery of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Courts grappling with the language of this statute as it applies in the modern era of ESI must make difficult decisions about whether various tasks related to ESI are more akin to the traditional copying of paper documents and therefore fall on the compensable side of the line, or whether they are pre-production tasks more akin to paper file retrieval and organization in preparation for copying which are non-compensable. See CBT Flint Partners, 737 F.3d at 1326 (endorsing the general principle that section 1920(4) "allows recovery only for the reasonable costs of actually duplicating documents, not for the cost of gathering those documents as a prelude to duplication . . . making necessary allowances for the inherent differences between paper and electronic documents."); see also Alzheimer's Inst. of Am. Inc., 2013 WL 8744216, at *2 ("Enacted in 1853, well before the era of e-discovery, the statute is technologically antiquated. Yet unless and until Congress chooses to update it to address the new and rapidly evolving era of computer and cloud-stored, processed and

produced data, courts must do their best to select and apply the most appropriate analogy from the era of paper documents which the statute addressed. Neither the Supreme Court nor the Ninth Circuit have directly addressed this issue or provided explicit guidance on how Section 1920 should be interpreted as it applies to various categories of electronic discovery costs.").

The law on taxing ESI costs in this district has been summarized as follows:

> Civil Local Rule 54–3(d)(2) interprets [Section 1920(4)] to encompass "[t]he cost of reproducing disclosure or formal discovery documents when used for any purpose in the case." "Taxable costs of copying client documents include the costs of collecting documents, reviewing those documents, and determining which are relevant." eBay, Inc. v. Kelora Sys., LLC, 2013 WL 1402736, at *5 (N.D.Cal. Apr. 5, 2013) (citation omitted). However, only those costs analogous to exemplification and copy-making are recoverable. Id. Thus, for example, "intellectual efforts involved in the production of discovery—including the research, analysis, and distillation of data incurred in the preparation of documents (as opposed to the cost of physically preparing the documents)—are not taxable costs." Id. (alteration, citation, and internal quotation marks omitted). Courts within the Northern District have awarded costs under this provision for "scanning paper documents, electronic scanning and conversion to PDF, TIFF conversion, OCR, image endorsement/Bates stamping, slip sheet preparation, blowback scanning paper documents, media hardware used for production, electronically stamping Bates numbers, slipsheet preparation, blowback preparation, and OCR conversion." Id. at *7. Importantly, e-discovery hosting costs and associated fees are not compensable. See, e.g., id. at *17 ("[T] he court does not tax hosting fees or user charges."); see also Ancora Techs., Inc. v. Apple, Inc., 2013 WL 4532927, at *3–4 (N.D.Cal. Aug. 26, 2013) (declining to award costs associated with electronic hosting of documents).

Linex Technologies, Inc. v. Hewlett-Packard Co., No. 13-CV-00159-CW (MEJ), 2014 WL 5494906, at *4 (N.D. Cal. Oct. 30, 2014); see also eBay Inc. v. Kelora Sys., LLC, No. C 10-4947 CW (LB), 2013 WL 1402736, at *7 (N.D. Cal. Apr. 5, 2013); Plantronics, Inc. v. Aliph, Inc., 2012 U.S. Dist. LEXIS 152297 (N.D. Cal. Oct. 23, 2012); Alzheimer's Inst. of Am. Inc., 2013 WL 8744216, at *4.

Defendant's Cole ESI Declaration states that outside vendor Blackstone Discovery assisted with ESI production in three phases: 1) Blackstone processed or imported imaged copies of certain ESI from 10 custodians that Defendant provided to it, and individual documents and files (such as emails, attachments and Word documents) were extracted from the source files, leaving the original files intact; 2) Blackstone organized the extracted documents by indexing, de-duplicating and de-Nisting them and then filtered these documents using search terms provided by Defendant to create a subset of documents that were loaded onto a Relativity database for attorney review; and 3) after attorneys reviewed the subset and tagged documents for production, Blackstone assisted with

3

production including PDF conversion, Bates numbering, and loading the final production onto a secure FTP site for download.  Id. at ¶ 5.  This process generally mirrors the one agreed to by the parties in CBT Flint Partners and detailed at 737 F.3d at 1328-29.  Defendant claims that, based on this process and in light of CBT Flint Partners, it has omitted approximately $13,886.65 in costs associated with de-duplicating, de-Nisting, culling extracted files using search terms, database and project management tasks, monthly hosting and licensing fees, and fees incurred for copying ESI onto backup media following production.  Id. ¶ 7.

Plaintiff responds that this reduced amount is still too high because, in contrast to the detailed ESI production process agreed to by the parties in CBT Flint Partners, here the parties had no agreement as to format and Plaintiff made no request for documents to be produced in a particular format.  Therefore, unlike in CBT Flint Partners, Plaintiff here argues that *all* costs for file extraction and conversion were unnecessary and for the convenience of Defendant's counsel.  Plaintiff contends that Defendant should have simply copied responsive files to a storage device in the format in which they were ordinarily kept and provided that storage device to Plaintiff.  CBT Flint Partners addressed this scenario of a cost request absent any agreement or order regarding ESI format:

> In contrast to the above scenarios, if a party from whom documents are sought is subject to no particular requirements governing the format or other characteristics of the produced documents, it might suffice for the producing party to copy the requested documents directly from the source media to the production media and deliver the production media directly to the requester. In that event, only the costs of that simpler process will be chargeable under section 1920(4). Of course, proceeding in that way might, for both producer and requester alike, significantly complicate other needed aspects of the litigation process, such as document review. A requester may therefore decide to request a production in a form that increases copying costs while saving other litigation costs. But if not, the costs are limited to the duplication needed for the production in the form required. At the same time, the producing party might choose, for the efficiency of its own litigation work, to image source drives and upload the images to a document database for faster filtering, searching, and review. That choice, however, would not change the costs chargeable to the requester as part of the costs of making copies under section 1920(4).

Id. at 1330.  Plaintiff argues that, under this reasoning, Defendant's costs should be limited to the minimal cost of a storage device (i.e., a flash drive or DVD-ROM) and Bates numbering the documents.  The Court agrees with Plaintiff that, absent an agreement or rule governing the format of ESI production, Defendant's recoverable costs are generally limited to those incurred during the

4

third phase of its ESI production process, such as Blackstone's assistance with document production including PDF conversion, Bates numbering, and loading the final production onto a secure FTP site for download.

However, some preliminary tasks necessary to make the information readable may also be compensable. See eBay Inc., 2013 WL 1402736, at *7. Plaintiff acknowledges the possibility that some of the files might have been unsearcheable and unuseable in their native format, but argues that the Cole ESI Declaration does not establish that this was the case for any particular file and there was no agreement as to format between the parties.  Courts in this district often allow costs for PDF and .TIFF conversion without discussing whether or not there was an express agreement between the parties to produce documents in these formats.  See, e.g., Kwan Software Eng'g, Inc. v. Foray Technologies, LLC, No. C 12-03762 SI, 2014 WL 1860298, at *4 (N.D. Cal. May 8, 2014); Ebay, 2013 U.S. Dist. LEXIS 49835, at *25-26); Plantronics, Inc. v. ALIPH, Inc., No. C 09-01714 WHA (LB), 2012 U.S. Dist. LEXIS 152297, at *33-34 (N.D.Cal. Oct. 23, 2012).  This is likely because, absent the extraction and conversion of certain types of files, they would be of no use to the receiving party and would not comply with Rule 34 which provides for the production of "documents or electronically stored information . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably useable form."

Defendant's necessary file extraction and conversion costs may be recoverable, but the Cole ESI Declaration does not explain if any, or approximately how many, documents fall within this category of otherwise not reasonably usable ESI.  Defendant shall file a further declaration that provides a breakdown sufficient for the Court to make a reasonable allocation between file and metadata extraction and conversion costs necessary to produce documents reasonably usable to Plaintiff as opposed to those costs incurred for Defendant's convenience to filter, search and review its own files prior to production.

Further, although Defendant defends some of its costs under the rubric of "load file creation," certain of the tasks described appear to be unrelated to creating load files.  Additionally, the Cole ESI Declaration lacks any explanation as to why load files were needed when there was no

agreement as to the format of ESI production. Courts routinely award costs for the generation of load files as a default, reasoning that they are akin to hard copy slip sheets and "unless something to the contrary is said, a request for documents is properly understood as a request that they be produced in a way that separates them to indicate where one ends and another begins." CBT Flint Partners, 737 F.3d at 1332. Here, however, Defendant has not adequately explained how the costs it claims under the rubric of load file generation relate to generating load files to separate electronic documents, as opposed to the process of loading documents into Defendant's review database for its own convenience. Defendant's further declaration should address this issue and provide information sufficient for the Court to make a reasonable allocation of costs relating to compensable load file generation.

Finally, Defendant does not explain whether its "processing costs" apply to all files or are limited to the files culled for production and therefore all processing costs should be disallowed. See id. at 1330 (if a vendor does chargeable work on a large volume of documents before culling to produce a subset, awarded costs must be limited to the subset). Defendant's allowable costs here are generally limited to the third phase of production, after attorney review, and therefore claimed costs should relate to the culled subset of production files. Defendant's further declaration should confirm that this is the case.

Defendant is ORDERED to submit a further declaration supporting its claimed e-discovery costs by no later than January 5, 2015, and Plaintiff shall have until January 8, 2015 to submit a brief response to the further declaration if he chooses to do so.

**IT IS SO ORDERED.**

Dated: December 19, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge