IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL BONILLAS, | No. C 12-6574-SBA (EDL) |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING MOTION FOR ATTORNEYS' FEES** |
| v. | |
| UNITED AIR LINES, INC., | |
| Defendant. | |

## I. Introduction

Plaintiff Raul Bonillas sued his employer, Defendant United Airlines, for race and disability discrimination and retaliation. In October 2011, Plaintiff was effectively demoted from his Supervisor-Components Maintenance position to a mechanic position as a result of an reduction in force known as the Talent and Selection ("TAS") process implemented after Defendant merged with Continental Airlines. All management, supervisory and administrative employees went through the TAS process in one way or another, but the precise process was decided on a department-by-department basis. In Plaintiff's department, all supervisors, including Plaintiff, had to reapply for their positions. Plaintiff reapplied but was not chosen for the supervisor position. Plaintiff brought suit against Defendant based on his belief that his failure to get the job was discriminatory and retaliatory based on race, national origin and disability. The case was assigned to Judge Armstrong and referred to this Court for discovery. On August 19, 2014, Judge Armstrong granted Defendant's Motion for Summary Judgment and entered Judgment in favor of Defendant. See Dkt. No. 145. Plaintiff has appealed Judge Armstrong's decision to the Ninth Circuit. See Dkt. No. 147.

Thereafter, Defendant filed this Motion for Attorneys' Fees, which Judge Armstrong referred to this Court for a Report and Recommendation. See Dkt. No. 152. Defendant argues that Plaintiff and

1  his counsel lacked evidence that any decision-maker was aware of his alleged disability of post
2  traumatic stress disorder ("PTSD") – an essential element of his federal and state law disability
3  discrimination claims – from the outset of the case.  Defendant contends that Plaintiff and his
4  counsel's filing and continued pursuit of the disability discrimination claims without this evidence
5  constitutes such a "reckless, bad faith pursuit of [] frivolous disability discrimination claims" that
6  harsh monetary sanctions are warranted against counsel under 28 U.S.C. section 1927 and the
7  Court's inherent power, as well as against Plaintiff personally under 42 U.S.C. section 12205 of the
8  Americans With Disabilities Act, California Government Code section 12965(b), and caselaw
9  applying these fee-shifting statutes.  Defendant seeks $164,320.84 in attorneys' fees relating to
10 Plaintiff's disability discrimination claims from the time the Complaint was filed.[1]  Alternatively,
11 Defendant seeks fees incurred after the date of Plaintiff's deposition totaling $113,100.62.[2]  These
12 amounts exclude $9,827.10 in fees previously recommended as discovery sanctions but not yet
13 recovered.  Defendant also seeks $21,556 in attorneys' fees associated with this fee motion, as well
14 as $13,465 in costs related to the disability discrimination claim incurred after Plaintiff's deposition.
15 Plaintiff opposes the fee motion by arguing that Defendant's position requires this Court to make
16 credibility determinations about the knowledge and intent of the decision-makers who demoted him,
17 and would essentially require discrimination plaintiffs to have direct evidence of an employer's
18 knowledge and motives at the time of filing or be subject to sanction.  Plaintiff also challenges
19 Defendant's calculation of fees, should the Court be inclined to grant a fee award.  Finally, Plaintiff
20 has submitted a declaration in which he states:  "I do not have the economic means to pay any award
21 of attorneys fees in this matter. The amount claimed by United is more than twice my yearly salary."
22 Bonillas Decl. ¶ 4 (Dkt. # 159-1).

23    This Court held a hearing on the matter on October 14, 2014.  For the following reasons, this
24 Court recommends that Defendant's motion for attorneys' fees be DENIED.  Plaintiff's disability

---

[1] These fees include $33,179.90 specific to the disability claims, plus $131,410.94 equal to one-fifth of the additional $657,054.70 in fees that Defendant claims it generally incurred in the case as a whole.

[2] The post-deposition fees include $19,984.30 specific to the disability claims plus $93,116.32 equal to one-fifth of the additional $465,581.60 in fees that Defendant claims generally incurred in the case.

2

discrimination claims were not so frivolous as to be sanctionable from the time the case was filed, and there has been no showing that Plaintiff or his attorney acted in bad faith by filing the case in the first place. Defendant's alternative request for fees from the date of Plaintiff's deposition presents a much closer question. While it would surely have been the better course for Plaintiff to have voluntarily withdrawn his disability discrimination claims after his deposition, on balance the Court concludes that maintaining the claims through summary judgment was not sufficiently reckless or frivolous to warrant shifting the substantial post-deposition fees incurred to Plaintiff or his counsel in light of the strong public policy in favor of vigorous enforcement of employment discrimination and civil rights statutes. Cf. Christiansburg Garmet Co. V. EEOC, 434 U.S. 412, 422 (1978) ("To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII."). In employment discrimination lawsuits, it can be difficult for plaintiffs to prove discriminatory intent when managers deny such intent and the plaintiff is not privy to oral communication between them, so it was not necessarily unduly reckless for Plaintiff to believe that he might ultimately be able to prove his claims.

In addition to the general concern about the potential of large fee awards to chill meritorious discrimination suits, here the Court also takes into account the fact that monetary sanctions of $9,827.10 have already been recommended against Plaintiff's attorneys in this matter. See Dkt. # 114. Further, in a separate Report and Recommendation, this Court recommends that costs be taxed against Plaintiff in the amount of $27,492.91. Thus, Plaintiff and/or his attorneys already face a not insignificant amount of financial liability. While the Court on balance recommends denying Defendant's request for fees in addition to these amounts, the Court recognizes and regrets that Defendant has had to incur significant expenses and does not condone all of Plaintiff's litigation conduct.

**II. Background**

The factual background of this case is detailed in Judge Armstrong's Order Granting Defendant's Motion for Summary Judgment and is not repeated here. See Dkt. No. 145 at p. 2-7.

1   For purposes of this fee motion, the question is whether Plaintiff and/or his counsel had a reasonable
2   basis for pursuing his disability discrimination claims or whether they pursued the claims
3   frivolously, recklessly or in bad faith.  In granting Defendant's Motion for Summary Judgment and
4   issuing Judgment in favor of Defendant, Judge Armstrong disposed of Plaintiff's disability
5   discrimination claims on the basis that no decision-maker had knowledge of Plaintiff's alleged
6   disability that could support the claims:

> Bonillas alleges that UAL discriminated against him on account of his Post Traumatic Stress Disorder ("PTSD"). Compl. ¶ 73. To prove a disability discrimination claim, "a plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made." Brundage v. Hahn, 57 Cal. App. 4th 228, 236-37 (1997). "An adverse employment decision cannot be made because of a disability when the disability is not known to the employer." Id. at 236.  Here, the only person at UAL who was aware of Bonillas' condition was Holder, who was not involved in the Supervisor selection process. Bonillas Dep. 129:16-133:23. Bonillas has likewise failed to present any evidence that the persons involved in his hiring decision were aware that he had PTSD. Opp'n at 26. To the contrary, the record shows that they were not.  Stewart Decl. ¶ 19; Fulton Decl. ¶ 15; Wagner Dep. 77:-78:3. Accordingly, UAL is entitled to summary judgment on Bonillas' disability discrimination claims.

Dkt. No. 145 at pp.19-20.

The parties characterize the underlying evidence very differently.  On the one hand, Defendant argues that Plaintiff knew from the outset of the case and admitted in his deposition that the only person he told about his PTSD diagnosis was his manager, Holder, yet Holder was not his manager at the time of the adverse employment action and played no part in the TAS process.  According to Defendant, because Plaintiff knew these facts at the time the case was filed, it was reckless and frivolous to include disability discrimination claims in the original complaint.

On the other hand, Plaintiff contends that Defendant had notice of his PTSD diagnosis as early as 2001 when he took a leave for injury to his "psyche" and in 2002 when his then-supervisor Walcott signed off on a workers' compensation form listing his injury as PTSD. See Bonillas Decl. Ex. A; Patton Decl. Ex. B.  However, there is no indication that Walcott had anything to do with any adverse employment action and Plaintiff does not argue to the contrary.  Further, Plaintiff argues in his Opposition that three managers – Holder, Wagner and Stewart – "were involved in the process of removing Plaintiff from his supervisor position."  Opp. At 9.  He also argues that Holder, Sklanka, and Turner were made aware of his PTSD and "participated and approved the Talent Selection."

4

1 Opp. at 14. Plaintiff also claims that he testified during his deposition that he told Holder and
2 Sklanka about his PTSD, and Sklanka in turn told Turner about it, although his citations do not
3 support that claim. See Opp. at 12 (citing Bonillas Depo. at pages 129-133).[3] Additionally, Plaintiff
4 points to an email on which Stewart, one of the decision-makers, was copied, noting a potential issue
5 with Plaintiff's "medical clearance." Id. (citing Patten Decl. Ex. B). The fact that Stewart was
6 copied on an email relating to "medical clearance" does not show that Stewart actually knew about
7 Plaintiff's PTSD or made any decision based on it, although it could be seen as circumstantial
8 evidence that he knew that Plaintiff had a medical issue of some kind.

9 Plaintiff contends that Judge Armstrong improperly made credibility determinations about and
10 weighed the evidence in granting Defendant's Motion for Summary Judgment, and in light of this
11 evidence it was not reckless or frivolous of him to make and maintain his disability discrimination
12 claim. Further, Plaintiff – apparently for the first time – offers a "cat's paw" theory of corporate
13 liability, arguing that Holder's knowledge of his PTSD should be imputed to the company because
14 Holder gave him a negative performance review that ultimately factored into the adverse
15 determination made during the TAS process.

16 **III. Discussion**

17     **A. Fees Against Plaintiff's Counsel**

18 Defendant's motion is primarily focused on obtaining fees from Plaintiff's counsel for bringing
19 and maintaining Plaintiff's disability discrimination claims under 28 U.S.C. section 1927 and this
20 Court's inherent power. A party may seek attorney's fees from opposing counsel if opposing
21 counsel unreasonably and vexatiously multiplies the litigation. 28 U.S.C. § 1927 ("Any attorney or
22 other person admitted to conduct cases in any court of the United States or any Territory thereof who
23 so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court
24 to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of

---

[3] The portions of his deposition that Plaintiff cites show that he told Holder about his PTSD, but not anyone else. The deposition testimony does reflect that Plaintiff told Sklanka that he was "rattled" by another employee's aggressive behavior, perhaps because he had been threatened by another employee at work in the past, and Plaintiff believed that Sklanka relayed this information to Turner. Thus, there is no indication that Plaintiff told Sklanka or Turner about a PTSD diagnosis, although there is evidence that Sklanka knew that Plaintiff had some emotional issue at his workplace.

5

such conduct."). In B.K.B. v. Maui Police Dept., 276 F.3d 1091 (9th Cir. 2002), the Ninth Circuit acknowledged that its cases "have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanctions for attorney's fees" under § 1927. A court can award § 1927 sanctions only upon a finding of bad faith, which is present when an attorney acts with knowing recklessness or argues a meritorious claim for the purpose of harassing the opposition. Id.

The Court may also enter sanctions against an attorney for litigation misconduct under its inherent power to control the judicial process. See Chambers v. NACSO, Inc., 501 U.S. 32, 45-46 (1991) (recognizing the inherent power of the courts to impose appropriate sanctions where conduct disrupts the judicial process). The Ninth Circuit has concluded that sanctions are available under the Court's inherent power if "preceded by a finding of bad faith, or conduct tantamount to bad faith," such as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose." See Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001) (attorney's reckless misstatements of law and fact, combined with an improper purpose, are sanctionable under the court's inherent power); see also Lahiri v. Universal Music & Video Dist. Corp., 606 F.3d 1216, 1218 (9th Cir. 2010) (while "[recklessness suffices for [section] 1927 sanctions . . . sanctions imposed under the district court's inherent authority require a bad faith finding"); Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001).

Defendant contends that Plaintiff's counsel was at least reckless in failing to conduct pre-litigation due diligence on the disability discrimination claims or ignoring facts that would make it impossible for Plaintiff to prove a prima facie case of disability discrimination from the outset. Defendant focuses on the undisputed fact known to Plaintiff (and thus presumably his counsel) at the time of filing, and admitted during Plaintiff's deposition, that Plaintiff's former manager, Holder, was the only manager that Plaintiff specifically informed of his PTSD diagnosis, yet Holder was not a decision-maker. See Bonillas Depo. at 129-133, 139-140, 209-210. However, fees under Section 1927 for the "unreasonable multiplication of proceedings" are inapplicable to an initial pleading and only apply to unnecessary filings and tactics after the lawsuit has begun. See In Re Keegan Mgmt. Co. Sec. Litig., 78 F.3d 431, 435 (9th Cir. 1996). Further, the Court is not persuaded that Plaintiff's

6

counsel acted in bad faith in filing the complaint in the first place so as to support a sanction under the Court's inherent authority.  Even if counsel should have known from the outset that Plaintiff only told Holder about his PTSD and that Holder was not a decision-maker in the TAS process, that does not amount to bad faith when it appears that Plaintiff believed that Holder had some role in the adverse employment action. Therefore, the Court does not recommend awarding fees against Plaintiff's counsel from the time the complaint was filed under either Section 1927 or the Court's inherent authority.

Alternatively, Defendant contends that even if Plaintiff's counsel were merely negligent in filing the complaint containing the disability discrimination claims, maintaining the disability discrimination claims after Plaintiff admitted during his deposition that Mr. Holder was the only manager he told about his PTSD was reckless and vexatious. See Thompson Decl. ¶ 7-8, 10; see also Bonillas Depo. at 129-133. Defendant relies on Moss v. AP, 956 F. Supp. 891, 895 (C.D. Cal. 1996), a disability discrimination case where the court refused to "apply 'hindsight logic' to conclude that Plaintiff's claim was frivolous, unreasonable, or unfounded from the outset," but awarded fees incurred later in the case where:

> Plaintiff's deposition testimony and discovery request demonstrate[d] that, at least on February 5, 1996, Plaintiff should have clearly been aware that continued litigation was either unreasonable or without foundation. Therefore, under Christiansburg, Defendant should be entitled to recover attorneys' fees incurred from the point that Plaintiff unreasonably continued the litigation.

Defendant contends that similarly here, at least after his deposition, it was reckless for Plaintiff and his counsel to pursue the disability discrimination claims.  Defendant notes that Plaintiff's Opposition to Defendant's Motion for Summary Judgment contained no factual argument or evidence supporting the disability claims, and Judge Armstrong summarily disposed of the claims.

The fact that a defendant prevails on summary judgment does not alone warrant an award of attorneys fees.  To award fees under the Court's inherent power, this Court must find that Plaintiff's counsel acted in bad faith, which requires something more than mere recklessness, and has not been shown.  Absent bad faith, post-deposition sanctions can still be awarded under Section 1927 only for reckless or frivolous attorney behavior.  In Cotterill v. City and County of San Francisco, 2010 WL 1223146 (N.D. Cal. March 10, 2010), an attorney was sanctioned under Section 1927 when he

7

1  misstated law and facts known to him, ignored court orders, and continued to litigate claims after it
2  was abundantly clear that the claims lacked legal and factual support.  Plaintiff's counsel's conduct
3  here does not rise to this level of malfeasance, where arguably there was some (albeit very limited
4  and highly attenuated) circumstantial evidence that might have supported Plaintiff's claims and there
5  is no evidence that counsel ignored Court orders.

6  As an additional argument in favor of attorneys' fees, Defendant points out that, while the
7  Motion for Summary Judgment was pending and during the parties' required pre-trial meet and
8  confer obligations, Plaintiff's counsel offered to dismiss the disability discrimination claims in
9  exchange for a waiver of costs but Defendant rejected the offer.  See Thompson Decl. ¶ 15, Ex. 4.
10 According to Defendant, this offer shows that Plaintiff's counsel was aware of the weakness of the
11 disability discrimination claims.  Plaintiff responds that this argument improperly reveals
12 confidential settlement negotiations in violation of Federal Rule of Evidence 408, and asks the Court
13 to strike paragraphs 15 and 16 of the Thompson Declaration and Exhibit 4 thereto.  The objection is
14 overruled.  Even if it were construed as a settlement offer, this evidence is not offered to prove or
15 disprove the validity of the claims in a determination of the merits, but instead to show Plaintiff's
16 counsel's knowledge of the weakness of his disability discrimination claims.  Indeed, summary
17 judgment was already granted.  While this offer could reflect Plaintiff's counsel's awareness that the
18 disability claims were meritless, it could instead reflect a legitimate strategy of dropping non-
19 frivolous claims prior to trial in order to narrow down the claims for presentation to the jury to avoid
20 confusion and focus the trial.  Such conduct should not be discouraged by the prospect of large fee
21 awards.  Therefore, the Court will not weigh this conduct against Plaintiff.

22 Plaintiff's counsel also now argues that it was not reckless or frivolous to maintain the disability
23 discrimination claims even after Plaintiff's deposition because Defendant could be liable under a
24 "cat's paw" theory of liability.  In Staub v. Proctor Hospital, 131 S.Ct. 1186, 1194 (2011), the
25 Supreme Court held that if a supervisor undertakes an act motivated by a discriminatory bias that is
26 intended to cause and does proximately cause an adverse employment action, then the employer can
27 be liable under a "cat's paw" theory of liability.  See also Poland v. Chertoff, 494 F.3d 1174, 1182
28 (9th Cir.2007) (holding that a subordinate's bias can be imputed to an independent decision-maker

8

1 who acts against plaintiff based on the influence or involvement of the biased subordinate). Plaintiff
2 argues that Holder's 2010 negative performance review, purportedly biased in some way by his
3 knowledge of Plaintiff's PTSD, ultimately impacted Plaintiff's negative TAS process review. It
4 does not appear that Plaintiff raised this argument during the summary judgment proceedings.
5 Further, even if Plaintiff had timely made this argument during the course of the litigation, it is
6 unlikely to have been successful absent additional evidence of causation. To establish cat's paw
7 liability here, Plaintiff would have had to show that Holder's negative 2010 performance review was
8 biased by his knowledge of Plaintiff's PTSD *and* that Holder intentionally set in motion and
9 influenced or was involved in the TAS decision-making process that led to Plaintiff's demotion.
10 Cafasso, U.S. ex rel v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011).

11 During oral argument, Plaintiff cited Muniz v. United Parcel Service, Inc., C-09-01987-CW,
12 2011 WL 3740808 at *3 (N.D. Cal. Aug. 23, 2011), an employment discrimination case in which the
13 court denied a defendant employer's motion for judgment as a matter of law because there was
14 evidence that the plaintiff's direct supervisor harbored discriminatory animus and contributed
15 materially to a non-biased decision-maker's decision to demote the plaintiff. The court relied on
16 evidence that the decision-maker consulted with the supervisor regarding the plaintiff's
17 performance, and that the supervisor was the one to fashion the terms of and implement a
18 performance improvement plan which ultimately led to the plaintiff's demotion. Id. Here, Plaintiff
19 has not pointed the Court to any evidence or argument that Holder set the TAS process in motion
20 and Holder's negative review did not preclude Plaintiff from interviewing for his job as part of the
21 process. See Cafasso, 637 F.3d at 1061. There is also no evidence that Holder influenced or was
22 involved in Plaintiff's TAS process. Nevertheless, though a very close question, this Court does not
23 recommend finding that Plaintiff's counsel's conduct was sufficiently egregious to warrant awarding
24 significant fees against counsel in addition to the $9,827.10 already recommended as discovery
25 sanctions as well as the costs taxed to Plaintiff.

26 **B.     Fee-Shifting Under the Disability Discrimination Statutes**

27 Defendant also argues that fees against Plaintiff himself are warranted under the fee-shifting
28 provisions of the ADA and FEHA. 42 U.S.C. section 12205 provides that: "the court in its

9

discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs." California Government Code section 12965(b) similarly provides that: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees." The United States Supreme Court has construed parallel language in Title VII to allow for fee awards to defendants upon a finding that the plaintiff's action was "frivolous, unreasonable, or groundless" or when the plaintiff "continued to litigate after it clearly became so." Christiansburg Garmet Co. V. EEOC, 434 U.S. 412, 422 (1978). The Ninth Circuit has extended this standard to ADA cases and awarded fees to prevailing defendants in some limited cases. See, e.g., Summers v. Teichart & Son, Inc., 127 F.3d 1150 (9th Cir. 1997) (applying Christiansburg standard to determine whether prevailing ADA defendant entitled to fees, but ultimately holding fees unwarranted under the facts of that case). Similarly, courts examining California law have applied the Christiansburg standard to FEHA claims in some cases. See, e.g. Bond v. Pulsar Video Prods., 50 Cal. App. 4th 918, 921, 923-25 (1996); Moss v. Assoc. Press., 956 F. Supp. 891, 894-95 (C.D.Cal. 1996). Significantly, courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Christiansburg, 434 U.S. at 421-22. Courts routinely deny fee awards to defendants even after granting a motion to dismiss or summary judgment in favor of defendants. See, e.g., Gibson v. Office of Att'y Gen., State of Cal., 561 F.3d 920, 929 (9th Cir. 2009); Summers v. Teichert & Son., 127 F.3d 1150, 1154 (9th Cir. 1997); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1489 (9th Cir. 1995). A plaintiff's "inability to defeat summary judgment does not mean that [the] claims were groundless at the outset." Karam v. City of Burbank, 352 F.3d 1188, 1196 (9th Cir. 2003).

Defendant relies on Peters v. Winco Foods, Inc., 320 F. Supp. 2d 1035, 1037 (E.D.Cal. 2004), where a district court awarded fees to a prevailing defendant in an ADA case following summary judgment because the case fell "within the category of exceptional cases meriting an award of attorney's fees." In Peters, the ADA plaintiff filed approximately 30 boilerplate complaints against various defendants making ADA claims that the plaintiff lacked standing to bring from the outset.

10

The court awarded fees relating to the frivolous claims despite the existence of one non-frivolous, but ultimately unsuccessful, claim. This case is not analogous to Peters in that there is no question of Plaintiff's standing and Plaintiff sued one, not thirty, defendants. Plaintiff persuasively contends that the cases where fees have been awarded to prevailing defendants in discrimination cases are based on more egregious facts than those at issue here. He cites, among others, Cummings v. Benco Bldg. Svcs., 11 Cal. App. 4th 1383 (1982), where the California Court of Appeals overturned a lower court's award of fees to a FEHA defendant, explaining that reasonable minds could disagree on whether her evidence was sufficient to overcome a motion for summary judgment and therefore her claim was not frivolous. Here, though summary judgment was granted in Defendant's favor, this is not a clearly exceptional case warranting fee shifting against an individual civil rights litigant.

Furthermore, Plaintiff has submitted a declaration stating, "I do not have the economic means to pay any award of attorneys fees in this matter. The amount claimed by United is more than twice my yearly salary." Bonillas Decl. ¶ 4 (Dkt. # 159-1). While an award of attorney's fees for a frivolous lawsuit may be sometimes be necessary to fulfill the deterrent purposes of 42 U.S.C. § 1988, the Ninth Circuit has cautioned that an award should not subject the plaintiff to financial ruin. See Miller v. L.A. County Bd. of Educ., 827 F.2d 617, 621 (9th Cir.1987). Although the Court may not deny fees based solely on this factor, it may consider Plaintiff's financial condition in determining whether to award fees. Miller, 827 F.2d at 621, n. 5; see also, Patton v. County of Kings, 857 F.2d 1379, 1382 (9th Cir.1988). Plaintiff's financial condition weighs against awarding fees against Plaintiff personally in this case.

For the foregoing reasons, the Court recommends that fees against Plaintiff be DENIED. Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO RECOMMENDED.**

11

Dated: February 18, 2015

ELIZABETH D. LAPORTE
United States Magistrate Judge